*O. B. Hord*, for the appellee.

---

## Woods v. Polhemus.

Husband and wife joined in a conveyance of all the interest of the wife in the estate of her deceased father. The deed was in general terms, not describing any tract of land, or parcel of property. The acknowledgment was taken in the usual form in *Queens* county, *New York*, on the 29th *March*, 1847, before one *Bissell*, acting as commissioner of deeds for *Virginia*. On the 7th of *April*, 1847, the wife died. On the 22d *October*, 1847, *Bissell*, acting as commissioner for the state of *Ohio*, and notary public for the county of *New York*, indorsed on the deed another certificate of acknowledgment, of the same date, and in the same words as the first. *Held*, that the wife never acknowledged the deed in conformity to the laws of *Indiana*, and that, therefore, her conveyance is wholly void as to lands in this State.

APPEAL from the *Parke* Circuit Court.

STUART, J.—Petition for partition, filed by *James S. Polhemus*, the plaintiff below, in *January*, 1850. The

petition represents that one *Thomas Woods*, late of *Virginia*, died seized of certain lands, describing them, situate in *Parke* and *Monroe* counties, *Indiana*. That *Thomas Woods* left as his heirs four children, viz., *Theodore*, *Edgar*, *John Henry* and *Ann Eliza Woods;* and his widow, *Mary Woods*, surviving him. That the petitioner, *James S. Polhemus*, intermarried with *Ann Eliza Woods* in 1840.

It is further represented that on the 29th of *March*, 1847, the petitioner joined with his wife, *Ann Eliza*, in a deed to *Abram Polhemus*, of all their right, title, and interest in the estate of *Thomas Woods*, deceased, wheresoever situate; and that on the 1st day of *May*, 1847, *Abram Polhemus* and wife conveyed to the petitioner all the estate and title granted by the deed of *March* 29th, 1847. Copies of both these deeds are made exhibits.

It further appears that on the 7th of *April*, 1847, ten days after she had joined in the deed with her husband, *Ann Eliza* died, leaving no children surviving her. The petition sets out the title of the several parties made defendants, prays that partition may be made, &c.

*Edgar Woods*, and the other defendants, answer, admitting *Ann Eliza* to be one of the heirs of *Thomas Woods*, deceased, admitting the description of the land, and the deeds as set out in the petition and exhibits. The only question raised is as to the scope and authority of the acknowledgment made by *Ann Eliza*. It appears that there are two certificates of acknowledgment attached to her deed, by the same person: one as commissioner of deeds for *Virginia*, and the other as notary public for the city and county of *New York*.

They both purport to bear the same date. The defendants below aver and charge the fact to be that the second certificate indorsed on the deed of petitioner and wife to *Abram Polhemus*, as commissioner for *Ohio*, and notary of the city and county of *New York*, was not made on the 29th of *March*, 1847, as it purports to be; that said certificate was not attached to the deed when admitted to record in *Virginia*, on the 10th of *May*, 1847;

but was made and done after the death of *Ann Eliza*, and not in conformity to the facts of the case, or to the laws of *Indiana* in that behalf. Hence, it is insisted that the petitioner is not entitled to any interest in the lands lying in the State of *Indiana*. The defendants pray to be dismissed with costs, and that the petitioner be enjoined, &c.

Replication in denial of, and putting in issue, the new matter set up in the answer. The cause was set down for final hearing on the petition, answer, replication, exhibits and depositions. Partition decreed, in accordance with the prayer of the petition, commissioners appointed, &c. *Woods's* heirs, the defendants below, appeal.

To a proper understanding of the case, it will be necessary to glance briefly at the deeds made exhibits A. and B.

Exhibit A. is the deed of *Ann Eliza*, and her husband to the Rev. *Abram Polhemus*, for the alleged consideration of 2,000 dollars in hand paid, &c. It purports to be made at *Newton*, *Queens* county, *New York*. No one tract of land, or parcel of property, is described. The grant is in general terms of all the property, real and personal, to which she, *Ann Eliza*, was entitled as one of the heirs of *Thomas Woods*, deceased. The conveyance concludes with a power of attorney clause, authorizing *Abram Polhemus* to collect, receipt for, &c.; confirming whatsoever he might do in the premises. It is acknowledged before one *Bissell*, a commissioner of deeds for the State of *Virginia*, and he certifies that *Ann Eliza* was duly examined, separate and apart from her husband, &c.

Then follow the indorsements of several recorders, viz., *May* 10, 1847, the certificate of *John McCullock*, recorder of *Ohio* county, *Virginia*, of its admission to record in that county. A like certificate of the recorder of *Belmont* county, *Ohio*, dated *October* 22, 1847, was also indorsed. Then follows the second certificate of *Bissell* as commissioner of the State of *Ohio*, and notary public of the city and county of *New York*, purporting

to be dated on the 29th of *March*, 1847. . This is the certificate, the validity of which the pleadings put in issue.

Exhibit B. is the deed of *Abram Polhemus* and wife to *James S. Polhemus.* It is in similar terms, and of the same tenor, even to the power of attorney clause, as the deed of *James* and wife to him; and is duly acknowledged and recorded.

The substance of the depositions, addressed chiefly to the issue formed upon the validity of *Bissell's* second certificate, is as follows:

The deputy recorder of *Ohio* county, *Virginia*, testifies that, when recorded on the 10th of *May*, 1847, the deed of *James* and *Ann Eliza* to *Abram Polhemus* had but the one certificate of *Bissell*, viz., the one given by him as commissioner of deeds for the State of *Virginia*. He further testifies that such was also its condition when subsequently, on the 6th of *August*, 1847, it was withdrawn from the recorder's office. Deponent saw the same deed again in the winter of 1851-2, and he testifies that it then had on it, in addition to several certificates of record in *Ohio* and *Indiana*, the further certificate of *Bissell* as commissioner of deeds for *Ohio*, and notary for the city of *New York*.

*Mary Woods* testifies that *Ann Eliza* died on the 7th of *April*, 1847.

*Bissell*, who took the acknowledgment, testifies that the certificate as commissioner of deeds for *Virginia*, was placed there by him at the time it bears date; but that the second certificate was not. His explanation is, that in the fall of 1847, *James S. Polhemus* called on him to certify said second acknowlegment for *Indiana* and *Ohio*. This he, *Bissell*, did, giving the second certificate on the deed, as commissioner of deeds for the State of *Ohio*, and notary public of the county of *New York*. That the only acknowledgment ever made before him by *J. S. Polhemus* and wife, was that of *March* 29th, 1847. *Bissell* continues in these words: "At the time I put on the first certificate, I do not think I was requested to cer-

tify the deed so that it might be used in *Indiana* or *Ohio*, or any other state except *Virginia*. If I had been requested to certify it for *Indiana* and *Ohio* I should have done so."

Further on, *Bissell* testifies: "If I had been requested at that time to certify it for *Ohio* and *Indiana*, also, I should doubtless have made one certificate, and so framed it that it would have entitled the deed to record in these three States. Such is my uniform practice in similar cases. I should not have done this unless Mr. *Polhemus* had requested it, and paid my fees for each State. And he probably would not have paid these fees without seeing that it was certified for the States in which he required it to be recorded. I considered myself, at the time, employed to certify for *Virginia*, only, and I did so certify. ......... If I had been so employed for the other States I should have furnished a certificate of such employment at or about that time."

In his further deposition, taken in *April*, 1853, he states the further facts, that he did not draw the deed of *James* and wife to *Abram Polhemus*, and did not know the contents of it, till he took the acknowledgment on the 29th of *March*, 1847; and that his second certificate, made out in the fall of 1847, was by him dated back to the time of the first acknowledgment.

The validity of this second certificate, so far as it relates to the lands in *Indiana*, is the only question presented in the case or argued by counsel.

It is well contended that at common law, a married woman could convey no interest in lands. She can convey, now, only by statute; and in such conveyance she must conform to the statutory requirements. *Elliott* v. *Piersol*, 1 Peters, 328. In the case just cited, the Supreme Court of the *United States* say: "Her acts are not like those of infants and some other disabled persons, voidable only, but are, in general, absolutely void, *ab initio*. The capacity of a feme covert to convey her real estate is the creature of statute law. To make her deed effectual the forms and solemnities prescribed by the statutes must be pursued." So,

also, in *Hepburn* v. *Dubois*, 12 Peters, 345. Mr. Justice *Baldwin* delivering the opinion of the Court, uses this language: "The deed of a feme covert does not pass her interest by virtue of its execution and delivery, as in the common case of a person under no incapacity." It is the acknowledgment in conformity to the statute, which, as to her, is essential, in conjunction with other solemnities, to give her deed validity. *Dawson* v. *Shirley*, 6 Blackf. 531.

The only exception to this is the ancient usage in the colony of *New York*, where it seems that, without any enabling statute, a feme covert could join with her husband to convey her real estate, instead of resorting to the common law mode of fine and recovery. Yet even there, such deed was inoperative without acknowledgment. 2 Kent, 150.—*Constantine* v. *Vanwinkle*, 2 Hill 240.

The acknowledgment is, therefore, the chief and essential element to give efficacy to the deed of a feme covert; and that solemnity must be in substantial compliance with the statute. *Jordan* v. *Corey*, 2 Ind. R. 385. In that case, the Court further decided that the officer taking the acknowledgment might afterwards amend according to the facts. Thus, an amendment to the effect that the wives were examined separate and apart from their respective husbands was held admissible.

Here, however, the question is not as to the right of the officer to amend a defective certificate according to the facts; but whether, as to lands in *Indiana*, there were any facts about which to certify. Hence, the doctrine of amendment held in *Jordan* v. *Corey* can have no application. The only question here is, did *Ann Eliza* acknowledge the deed for the lands lying in *Indiana* in conformity to our statute? (1)

To pass her interest in the *Indiana* lands, several things were essential: 1. The deed must, either expressly, or by necessary implication, have embraced the *Indiana* lands; 2. *Bissell* must at the time have been an officer competent and duly authorized to take the acknowledgment of deeds for lands in *Indiana*; 3. He

CASES IN THE SUPREME COURT

must have acted in that capacity on the 29th of *March*, 1847. Other essentials might be suggested but these are sufficient to indicate the very point in issue.

The first and second propositions may as well be conceded. That the terms of the deed were comprehensive enough to embrace all the lands of which *Thomas Woods* died seized, wherever they might be located, is admitted. Admit, also, that the second acknowledgment was of the deed in all its comprehensive import. It may be further admitted that *Bissell* was at the time a notary public of the city and county of *New York*. That gave him sufficient authority to take the acknowledgment within that county for lands in *Indiana*. R. S. 1843, p. 418, s. 28. As such notary, he might have taken the acknowledgment in the county of *New York*. Did he so take it on the 29th of *March*, 1847, is the only remaining question.

Of that official action on the part of *Bissell*, the deed and the second certificate are said to be the evidence. But they are only *prima facie* correct. For, by statute, the certificate is not conclusive, but may be rebutted, and the force and effect thereof contested, by any party affected thereby. R. S. 1843, p. 423, s. 50. What evidence is there to rebut the certificate? There are several considerations which strongly rebut the apparent presumption in its favor. That the second certificate, the force of which is claimed to extend the conveyance to *Indiana*, was not made for months after the 29th of *March*, 1847, and after the death of *Ann Eliza*, does not admit of doubt. It was actually as late, or perhaps later than *September*, 1847; and yet it bears date as of *March*, 1847. Thus, the depositions rebut the contemporaneous character of the certificate which otherwise its face imports.

The deposition of *Bissell* himself, rebuts with equal clearness the assumption that he acted or pretended to act as a notary, or with any reference to the lands in *Indiana*, on the day the acknowledgment was taken. He expressly says he was not called upon to act as a

notary for lands in *Indiana*. He was called upon only as commissioner of deeds for *Virginia*. As such only he acted. As such, it is very clear he had no intention to take, and did not take, the acknowledgment as a notary, for lands in *Indiana*. The acknowledgment actually taken, conveyed nothing outside of the State of *Virginia*. Under such an acknowledgment the conveyance did not attach to the *Indiana* lands. If *Polhemus* and wife intended to convey her *Indiana* property, they should have called in a person authorized under our statute to act, and he should have acted accordingly. *Bissell's* own reason for thinking he was not called upon to act in any other capacity than that of commissioner for *Virginia*, seems conclusive. He says that had he been called upon to certify for *Ohio* and *Indiana*, he should have received fees for each State, and framed one certificate to answer for all the three States. Besides, *Polhemus* and wife lived in *Queens* county. There, no doubt the deed was executed and the acknowledgment taken. The wording of the certificate, together with the ill health of *Ann Eliza*, gives weight to that hypothesis. He certifies that *Polhemus* and wife personally appeared before him, not in the county of *New York*, but in his State aforsaid. The office of commissioner of deeds he might well execute in any part of the State. But it is not so easy to see how, as notary for the county of *New York*, he could take the acknowledgment of a deed in *Queens* county. Yet the phraseology of the second certificate is in this respect identical with the first,—they appeared before him in his State aforesaid,—showing that both referred to the same occasion and place. Hence, an additional consideration, perhaps not controlling of itself, why he did not act as notary in *Queens* county, because he had not the power or authority so to act.

We think *Bissell's* deposition, fortified as it is by these circumstances, successfully rebuts the certificate, destroying its force and validity as such. With the acknowledgment, the deed of the feme covert must also fall.

Nov. Term,
1856.

WOODS
v.
POLHEMUS.

The force of this reasoning will appear the more striking, if we suppose *Bissell* divested of his multiform official capacities, except that of commissioner of deeds for *Virginia*. In that case, it could not be pretended that the deed, however sweeping in its language, or the acknowledgment, no matter in what comprehensive terms conceived, could have the effect to convey *Ann Eliza's* lands in *Indiana.* Simply as a commissioner for *Virginia*, *Bissell* was not an officer known to our law—not authorized to authenticate deeds for *Indiana*. So, too, though he were a notary, competent to act under our statute, yet if, on the occasion referred to, he did not act in that capacity officially, the result is the same. *Ann Eliza's* deed was incomplete, and conveyed nothing in *Indiana*. Any other notary in *New York* might, without even seeing Mrs. *Polhemus*, have given a like certificate, with like *prima facie* effect, but if it appeared clearly that he was not a notary, or, if he were, that he had not acted as such on the occasion referred to, his certificate would be equal to *Bissell's* as it stands in this record.

It follows, therefore, that as *Ann Eliza* never acknowledged the deed in conformity to the laws of *Indiana*, her conveyance as to lands in this State is wholly void. Neither *Abram Polhemus* nor the petitioner ever acquired any rights under it here.

The decree for a partition was consequently erroneous and must be reversed.

*Per Curiam.*—The decree is reversed with costs. Cause remanded with instructions to grant the prayer of the answer, for an injunction against *James S. Polhemus*, and all claiming under him; and that it be made perpetual.

*A. L. Roache*, for the appellant.

*J. P. Usher* and *C. Y. Patterson*, for the appellee.

(1) Counsel for the appellant cited *Dawson* v. *Shirley*, 6 Blackf. 531; *Lessee of Patton* v. *Broom*, 1 Cook, 119; and 5 Manning, Granger and Scott, 753. In the latter the Court refused to permit the officer to correct a date in an acknowledgment, though it was palpably a mere clerical error.