WILMA THOMPSON, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 4041–66. Filed June 27, 1968.

*E. Lawrence Merriman,* for the petitioner.
*John W. Dierker,* for the respondent.

#### OPINION

FEATHERSTON, *Judge:* Respondent determined a deficiency in petitioner's income tax for 1963 in the amount of $736.89. The only ques-

tion presented is whether $3,800 of a total sum of $8,000 received by petitioner in 1963 from Charles Thompson, Jr., her former husband, pursuant to a divorce decree entered January 14, 1963, is taxable to petitioner as alimony under Code section 71.[1]

All the facts are stipulated.

Petitioner resided in Muleshoe, Tex., at the time the petition herein was filed. She filed an individual Federal income tax return for the calendar year 1963 with the district director of internal revenue at Dallas, Tex.

Petitioner and Charles Thompson, Jr. (Charles) were married in 1937. On April 16, 1962, petitioner instituted a divorce suit against Charles in the Circuit Court of Knox County, Ind., and in an amended complaint alleged, among other things, that Charles had induced her to convey certain real property to Thompson Farms, Inc., a corporation formed in 1961, and that she was the owner of one-half of the stock received as consideration for the real property conveyances. On May 2, 1962, Charles filed a cross-complaint against petitioner. Extensive testimony was taken at the trial relating to the real property transferred to Thompson Farms, Inc.

The testimony at the divorce trial was that during their marriage petitioner and Charles acquired approximately 117 acres of farmland as tenants by the entirety. This land was acquired with the sole funds of Charles and consisted of 89.80 acres, more or less, known as the Williamson farm, and 28.22 acres, more or less, known as the Beard farm. Charles acquired during the marriage and prior to November 1961, a substantial amount of other farm property in his own name, also with his own funds. By six separate warranty deeds dated November 22, 1961, each executed by petitioner and Charles, approximately 1,200 acres of farmland were transferred to the newly formed corporation, Thompson Farms, Inc. The 1,200 acres included the 117 acres held by the entirety. Title to the balance was in Charles alone. The deeds recited consideration of $1 but apparently no cash was paid. The new corporation, however, issued all of its stock to Charles (656 shares) and his two sons (172 shares each).[2] Petitioner joined in the deeds to the property owned by Charles to convey her inchoate interest. Charles denied any wrongful conduct in connection with the transfers to Thompson Farms, Inc., and denied that petitioner had any interest in the stock.

On January 14, 1963, the court granted petitioner an absolute di-

---

[1] All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise noted.

[2] Apparently the two sons transferred some farm equipment to the new corporation in consideration of the shares issued to them.

vorce. The divorce decree, after settling rights to certain insurance policies, personal and real property, contained the following orders:

That plaintiff, Wilma R. Thompson, is entitled to alimony in the amount of thirty-eight thousand dollars—($38,000.00) and in the payment thereof it is ordered that the defendant, Charles Thompson, Jr., pay eight thousand dollars ($8,000.00) within sixty (60) days; three thousand dollars ($3,000.00) on or before December 1, 1964; three thousand dollars ($3,000.00) on or before each December 1 thereafter until same is paid in full including interest. The said alimony judgment hereinafter rendered shall bear interest at the rate of four per cent (4%) per annum on the unpaid balance as same exists from time to time.

It is further ordered that the said alimony judgment and payments above ordered shall be secured by a second mortgage to be executed by the defendant, Charels Thompson, Jr., to Wilma R. Thompson on the farm known as the Van Eaton Farm.

The divorce decree contained no findings with respect to the transfer of property to Thompson Farms, Inc., or to the ownership of the stock of that corporation. In 1963, Charles paid petitioner $8,000 pursuant to the divorce decree.

Respondent contends that $3,800 of the $8,000 paid to petitioner in 1963 is a periodic payment under section 71(c)(2) and is therefore taxable to petitioner under section 71(a)(1). The pertinent Code provisions are set forth in the margin.[3]

Petitioner contends that the $8,000 payment was made in exchange for her share of the property accumulated during the marriage, and is therefore nontaxable.[4]

---

[3] SEC. 71. ALIMONY AND SEPARATE MAINTENANCE PAYMENTS.

(a) GENERAL RULE.—

(1) DECREE OF DIVORCE OR SEPARATE MAINTENANCE.—If a wife is divorced or legally separated from her husband under a decree of divorce or of separate maintenance, the wife's gross income includes periodic payments (whether or not made at regular intervals) received after such decree in discharge of (or attributable to property transferred, in trust or otherwise, in discharge of) a legal obligation which, because of the marital or family relationship, is imposed on or incurred by the husband under the decree or under a written instrument incident to such divorce or separation.

\*       \*       \*       \*       \*       \*       \*

(c) PRINCIPAL SUM PAID IN INSTALLMENTS.—

(1) GENERAL RULE.—For purposes of subsection (a), installment payments discharging a part of an obligation the principal sum of which is, either in terms of money or property, specified in the decree, instrument, or agreement shall not be treated as periodic payments.

(2) WHERE PERIOD FOR PAYMENT IS MORE THAN 10 YEARS.—If, by the terms of the decree, instrument, or agreement, the principal sum referred to in paragraph (1) is to be paid or may be paid over a period ending more than 10 years from the date of such decree, instrument, or agreement, then (notwithstanding paragraph (1)) the installment payments shall be treated as periodic payments for purposes of subsection (a), but (in the case of any one taxable year of the wife) only to the extent of 10 percent of the principal sum. For purposes of the preceding sentence, the part of any principal sum which is allocable to a period after the taxable year of the wife in which it is received shall be treated as an installment payment for the taxable year in which it is received.

[4] Neither party has raised the question of whether, in the event we accept petitioner's theory of the case, there would be a capital gains tax on the transfer. See *Jessie Lee Edwards*, 22 T.C. 65 (1954). In view of our holding we need not reach this question.

Where a principal sum, to be paid in installments which may extend over a period in excess of 10 years, is ordered in a divorce decree in satisfaction of an obligation to support, section 71 requires the former wife to report an amount equal to 10 percent of the principal sum or the amount of payment, whichever is the lesser, as taxable income. On the other hand, if the payments by the former husband are made in satisfaction of her property rights, then his payments are in the nature of a capital investment, and the amount thereof is not taxable to her as alimony. See *William D. Price, Jr.*, 49 T.C. 676 (1968); *Blanche Curtis Newbury*, 46 T.C. 690 (1966); *Taylor* v. *Campbell*, 335 F. 2d 841 (C.A. 5, 1964); *Bardwell* v. *Commissioner*, 318 F. 2d 786 (C.A. 10, 1963), affirming 38 T.C. 84 (1962); *Soltermann* v. *United States*, 272 F. 2d 387 (C.A. 9, 1959).

That the payment in question is referred to as alimony in the State court decree is not conclusive. *Blanche Curtis Newbury*, *supra*. The text of section 71 does not use the word alimony but prescribes only that payments in discharge of legal obligations which are imposed because of the family relationship are includable in the gross income of the wife. The regulations amplify the statute by explaining that section 71(a) applies only to payments made because of the marital relationship and in recognition of the general obligation to support. Sec. 1.71–1(b)(4), Income Tax Regs.; *John Sidney Thompson*, 22 T.C. 275 (1954); cf. *Bardwell* v. *Commissioner*, *supra*; *Soltermann* v. *United States*, *supra*; *Taylor* v. *Campbell*, *supra*; *Ann Hairston Ryker*, 33 T.C. 924 (1960). The problem is to determine the character of the payment.

We conclude, on the basis of this record, that $3,800 of the $8,000 payment made to petitioner in 1963 was a "periodic" payment within the meaning of section 71(c)(2) and is taxable to her in that year under section 71(a)(1). This portion of the payment meets all the requirements for taxation under the section. Petitioner has failed to prove that the payment was not "alimony" payable in discharge of Charles' obligation to support her as determined by respondent. The record is barren of any evidence that petitioner, at the time of the divorce, owned any property whatever in exchange for which the divorce court awarded her the $38,000.[5] We cannot, therefore, hold that the payments made pursuant to the divorce decree were received

___

[5] Petitioner argues that the deed to Thompson Farms, Inc., was a nullity because, the divorce court trial record shows, her acknowledgment was taken over the telephone, citing *Woods* v. *Polhemus*, 8 Ind. 60 (1858), and *Mays* v. *Hedges*, 79 Ind. 288 (1881). The pleadings in the divorce court contain no such allegation and the divorce court reached no such conclusion. Furthermore, the law of Indiana appears to be that a deed is valid between the parties without acknowledgment, although it is not entitled to be recorded. *Bever* v. *North*, 107 Ind. 544, 8 N.E. 576 (1886); *Wine* v. *Wood*, 109 Ind. 291, 10 N.E. 399 (1887).

by her in satisfaction of property rights which she accumulated during the marriage.

Petitioner emphasizes the form of the divorce decree. The decree awarded petitioner a lump sum of $38,000 payable in installments; provided for the payment of interest on the unpaid balance; called for the execution of a second mortgage on the Van Eaton Farm to secure the judgment; and did not provide that the installment payments should cease on the death or remarriage of petitioner. Where the wife has property of her own, such provisions appearing in a separation agreement or divorce decree are often regarded as persuasive that payments to the wife represent a property settlement rather than support payments. See, e.g., *Ann Hairston Ryker, supra* at 929–930; *Campbell* v. *Lake,* 220 F. 2d 341 (C.A. 5, 1955). But that is not the situation here. Cf. *Julia Nathan,* 19 T.C. 865 (1953) ; *Riddell* v. *Guggenheim,* 281 F. 2d 836, 841 (C.A. 9, 1960).

Petitioner contends that she owned an interest in real property which was transferred to Thompson Farms, Inc.[6] in November 1961, and that the $38,000 award was for either her interest in that real property or a portion of the stock of Thompson Farms, Inc. We do not agree. The only direct support for this contention is a mere allegation in petitioner's amended complaint in the divorce proceeding that she owned one-half of the consideration received by her husband for the land. There is no evidence before us as to the circumstances in which petitioner relinquished her joint title to the 117-acre farm without exacting some record of ownership of stock in the corporation. Nor is there any evidence of any correlation between the $38,000 award and the value of her alleged interest in either the real property or the stock at the time of the transfer to Thompson Farms, Inc., or at the time of the divorce. The portion of the testimony taken in the divorce court which was stipulated as part of the record in this proceeding is inconclusive as to her stock ownership, and the divorce court made no finding that petitioner owned any stock or other property. Obviously, we cannot make such a finding on the basis of a portion of the record before that court. Indeed, the concluding allegation in the divorce complaint was that "plaintiff [petitioner] is entitled to a judgment for *a reasonable amount of defendant's* [Charles'] *property by way of alimony*" [emphasis added] and the prayer was that "she be awarded

---

[6] In addition to the 117 acres owned by petitioner and Charles, as tenants by the entirety, petitioner claims that she was also coowner of the balance of the property transferred to Thompson Farms, Inc., contending that, by virtue of Indiana law, property conveyed to a husband and wife without qualifying words creates a tenancy by the entirety. There is, however, no evidence in this record that any property was transferred by deed to petitioner and Charles as grantees (other than the 117 acres).

judgment for a reasonable amount by way of alimony." [7] See *Hazel Porter*, T.C. Memo. 1966–79, affd. 388 F. 2d 670 (C.A. 6, 1968).

Moreover, the Indiana statutes are consistent with our conclusion that the $38,000 lump-sum award was made to petitioner in lieu of her right to continued support from her husband. While the institution of a divorce suit confers upon the Indiana divorce court jurisdiction to order a complete division of the property interests of the spouses, it also confers jurisdiction on the court to provide for the support of the wife through an award of alimony. See Ind. Ann. Stat., secs. 3–1217 and 3–1218; Note, "Alimony in Indiana: Traditional Concepts v. Benefit to Society," 29 Ind. L.J. 461 (1953–54). The statute contemplates that a "fixed sum of alimony be determined, based on the present and immediately foreseeable circumstances of the parties." *McDaniel* v. *McDaniel*, 245 Ind. 551, 201 N.E. 2d 215, 219 (1964). The theory is that fixing a lump sum to be paid out of the husband's property in lieu of continuing support payments contributes to the finality of the separation arrangements for the divorced parties. "[I]t is the basic concept of alimony that such payment be made in lieu of a wife's right to the continued support of her husband." [8] *McDaniel* v. *McDaniel, supra*, 201 N.E. 2d at 218. The court, as an accommodation to the husband, may permit the fixed sum to be paid over a period of time, ordering such security, including a lien on real estate, as the court may determine. The court may also order interest to be paid on the unpaid balance of an alimony award. See *Runyan* v. *Runyan*, 72 Ind. App. 469, 126 N.E. 35 (1920).

Finally, the divorce decree recites that "Both parties now in open Court waive their right to file motion for new trial herein and waive all right of appeal," thus indicating that the parties agreed to the provisions of the divorce decree. The provisions of the divorce decree meet precisely the 10-year periodic payment requirements for includability of the payments in petitioner's taxable income under section 71. We infer, in the absence of evidence to the contrary, that the parties, following the trial, agreed to the terms of the judgment

[7] The stipulation contains 13 paragraphs of an amended complaint filed in the divorce court making detailed allegations as to the property accumulated during the marriage, but neither the concluding paragraphs nor the prayer of the amended complaint was included in the stipulation.

[8] No. 1 of the *McDaniel* opinion, 201 N.E. 2d at 220, states:

"The primary factor in fixing the amount of alimony is the existing property of the parties, and other factors which may be considered are the amount and source of the husband's property, his financial condition, the income of the parties, and the ability of the husband to earn money. Courts may also consider the separate estate of the wife, the wife's financial condition. The courts may also consider the conduct of the parties toward each other, the wife's innocence of wrongdoing, and the nature of the abuse inflicted on her by her husband."

The court, 201 N.E. 2d, at 218–219, explains that this concept of alimony is not inconsistent with *Shula* v. *Shula*, 235 Ind. 210, 132 N.E. 2d 612 (1956), on which petitioner relies.

and the agreement included an understanding that the deferred payments were indeed alimony rather than payments for petitioner's disputed property interests.[9] See *Ann Hairston Ryker, supra.*

Petitioner's reliance on *Scott* v. *United States,* 225 F. Supp. 257 (D. Ore. 1963), and *Mills* v. *United States,* an unreported case (N.D. Okla. 1967, 20 A.F.T.R. 2d 5205, 67-2 U.S.T.C. par. 9575), is misplaced. In *Scott* the court was careful to point out that "a substantial portion of the property was owned by the Howards [the divorced couple] as an estate by the entirety" at the time of the divorce, that the wife "claimed title to other property" and that the wife had never claimed alimony or support payments. None of these facts exist here. In *Mills* the court found that the value of the wife's share of the property was $90,000 and that the installment payments in that amount, provided for in a property settlement agreement, were for her interest in that property.

*Decision will be entered for the respondent.*

---

[9] This inference is supported by the fact that the divorce decree provided that petitioner was to sign a joint Federal income tax return for the year 1962, which indicates that the parties were conscious of the tax consequences flowing from the divorce.