RUTH F. WRIGHT (Formerly Ruth F. Rimmer), Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Wright v. Commissioner
Docket No. 7443-73
United States Tax Court
T.C. Memo 1978-77; 1978 Tax Ct. Memo LEXIS 438; 37 T.C.M. (CCH) 372; T.C.M. (RIA) 780077; February 27, 1978, Filed A. Benjamin Strand, Jr., for the petitioner. W. Robert Pope, Jr., for the respondent. WILBUR
MEMORANDUM FINDINGS OF FACT AND OPINION WILBUR, Judge: Respondent has determined deficiencies in petitioner's Federal income tax and an addition to tax as follows: Addition to tax Year
Deficiency
Sec. 6651(a) [1]
1967
$ 545.66
$ 136.41
1968
906.72
Certain concessions having been made by the parties, the sole issue remaining for decision is whether the income from a 10-year leasehold estate created by a final decree of divorce is taxable to petitioner either under section 71(a) or section 61(a). FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly.
Petitioner, Ruth F. Wright, (formerly Ruth F. Rimmer), resided in Dandridge, Tennessee at the time her petition was filed herein. Petitioner did not file a Federal *440 income tax return for the taxable year ending December 31, 1967. For the taxable year ending December 31, 1968, petitioner filed her Federal income tax return with the Director, Southeast Service Center, Chamblee, Georgia. Petitioner and her former husband, John Alexander Rimmer, were married on June 20, 1942 in Jefferson County, Tennessee. They had two children, John Curtis Rimmer, born November 26, 1945, and Thomas Edward Rimmer, born September 18, 1952. Prior to their divorce in 1967, [2] John Rimmer had a one-half interest in a large handbag manufacturing business, Tennessee Handbags, Inc. The handbag business was the outgrowth of a small handbag manufacturing operation conducted at home by petitioner and Mrs. Parilee French, petitioner's mother. In the early years of petitioner's marriage to John Rimmer, her parents operated a country store. One of their customers taught petitioner to weave ladies' handbags. From this art, petitioner created a small but growing trade in these handbags. The building to the rear of the country store, in which the handbag operation was housed, was enlarged twice *441 to accommodate the growing business. About 2 years after petitioner and her parents had begun the business, Rimmer became active in it. Before his entry into the business on a full time basis, Rimmer was teaching an automobile body repair and refinishing business course in a G.I. school. When Rimmer did come into the business it was moved to a service station building which he owned in Dandridge, tennessee. About the time the business moved to Dandridge, Rimmer, his brother, Fred E. Rimmer, and Bruce French, petitioner's father, formed a partnership and operated the business under the name of Tennessee Handweavers. In 1959, petitioner's father died and the partnership purchased his interest. Petitioner's $9,000 inheritance was given to John Rimmer who placed the money back into the business. The manufacturing business continued to grow and became too large for the service station building in Dandridge. This building was therefore sold by John Rimmer and Fred Rimmer to Engineered Products, Inc., and the money from that sale was used to purchase the building in which the handbag manufacturing business was conducted up to the time of trial. Petitioner and John Rimmer began *442 to have marital problems in 1963 and 1964 and after two prior divorce actions, the parties were finally divorced by the decree of Chancery Court of Jefferson County, Tennessee in April 1967. Prior to the granting of divorce, John Rimmer was president of Tennessee Handbags, Inc., which was the successor of Tennessee Handweavers. By 1967, the business had become a very large manufacturer of ladies' handbags employing a substantial number of people. After a full hearing the chancellor rendered a memorandum opinion which was incorporated into the final decree of divorce. In his memorandum opinion the chancellor found John Rimmer to have a net worth of approximately $265,000, not including a cash bonus he was to receive in December 1966, household furnishings an automobile and a boat. His holdings were enumerated as follows: 3,750 shares of Tennessee Handbags, Inc.
at book value of $51.02 per share.
$191,325.00
250 shares of Engineered Products, Inc.
having a value of $63.11 per share
15,993.94
Note of Tennessee Handbags, Inc., payable
to John A. Rimmer, in the principal
amount of $11,090.16 + $519.27, interest
11,609.46
One-half interest in note payable jointly
to John A. Rimmer and Fred A. Rimmer,
in the amount of $7,500.00
4,275.00
Residence property
18,000.00
One-half interest in real estate leased
to Tennessee Handbags, Inc.
25,750.00
$266,953.40
*443 Petitioner was awarded an absolute divorce and the custody of the children of the parties. She was given a life estate in the family residence with remainder in fee simple vested in the two sons. One-half of John Rimmer's shares of Tennessee Handbags, Inc., was awarded as follows: Petitioner
875 shares
John Curtis Rimmer
500 shares
Thomas Edward Rimmer
500 shares
Petitioner was also awarded the household furnishings, the automobile, half the cash bonus due John Rimmer, and the interest from the two notes due and payable to John Rimmer. In addition, petitioner was awarded a 10-year lease-hold estate on the business real estate which her husband, John Rimmer, held as a tenant in common with his brother, Fred E. Rimmer, and leased to Tennessee Handbags, Inc. With respect to this leasehold, the opinion of the chancellor recited as follows: The Court is further of the opinion that by way of further alimony in solido, and to give to complainant funds for her livelihood and for the further support and education of her children, a ten-year leasehold estate should be created into the complainant out of the one-half interest owned by the defendant in the business *444 real estate now leased to Tennessee Handbags, Inc., so that the complainant will receive from Tennessee Handbags, Inc., each month for ten years, the rental from said one-half interest, which is now by lease fixed at $396.00 per month. * * * In the making of the award of the ten-year leasehold interest in the real estate to the complainant, the Court has calculated that over a ten-year period, at the present rental, said leasehold estate would engender a rental of $47,520.00, following which the right to receive said rental would revert to the defendant. [3]
When the divorce decree was entered on April 10, 1967, the business real estate in which petitioner's leasehold estate was created was subject to a lease in favor of Tennessee Handbags, Inc. This lease was executed on September 1, 1964 for a 5-year period with the option to renew for an additional 5 years.The total rent under the lease was $792 *445 per month of which petitioner was entitled to one-half by virtue of her leasehold interest. During the years 1967 and 1968, petitioner received $3,168 and $4,752 in rent, respectively. In September 1974, a new lease was executed, pursuant to which petitioner was to receive $616 per month until her interest terminated on May 1, 1977. OPINION The issue we address is whether the income from the ten-year leasehold estate created by the final divorce decree is taxable to petitioner under section 71(a) or section 61(a). Section 71(a)(1) [4] provides that if a wife is divorced or legally separated from her husband, the wife's gross income includes periodic payments received in discharge of a legal obligation arising out of the marital or family relationship and which is "imposed on or incurred by the husband under the decree or under a written instrument incident to such divorce or separation." *446 The statute thus sets down three requirements for the inclusion of payments in the wife's income: 1. The liability for the payments must be imposed on or incurred by the husband under a decree of divorce or separate maintenance or under a written instrument incident to such divorce or separation. 2. The payments must be made in discharge of a legal obligation arising out of a marital or family relationship.[5]
3. The payments must be "periodic." The parties agree that the payments in question were made pursuant to a qualifying divorce decree. Addressing herself to the second requirement, petitioner contends that the income from the 10-year leasehold was not in the nature of alimony but rather resulted from a settlement of the parties' respective property rights. We have frequently held that payments made in satisfaction of the wife's property rights are capital in nature and therefore not includible in her gross income under section 71 nor *447 deductible by the husband under section 215. [6]Wright v. Commissioner, 62 T.C. 377, 389 (1974) affd. 543 F.2d 593 (7th Cir. 1976); Jackson v. Commissioner, 54 T.C. 125, 129 (1970); Thompson v. Commissioner, 50 T.C. 522, 525 (1968). Whether payments represent a division of property or alimony is a question of fact, turning on all the circumstances surrounding the divorce decree. [7]Hesse v. Commissioner, 60 T.C. 685, 691 (1973); Jackson v. Commissioner, supra; Ryker v. Commissioner, 33 T.C. 924, 929 (1960). "The use of a particular label in the divorce decree or settlement agreement is not conclusive; nor is any other factor irrebutable proof of the parties' intentions." Wright v. Commissioner, supra, at 598. *448 The property settlement versus alimony question is a difficult and frequently litigated issue. The distinction between the two has been marked by a less than satisfactory degree of clarity. However, after examining the facts here, especially in light of the legislative purpose behind the alimony provisions, we have concluded that the income from the leasehold more closely represented payments in the nature of alimony than payments in satisfaction of a property settlement. The statutory predecessors of sections 71 and 215 were designed to relieve the hardship on husbands who were paying alimony out of after-tax dollars in the face of increasing income tax rates. [8] In many instances, Congress noted, "the husband would not have sufficient income left after paying alimony to meet his income tax obligations." H. Rept. No. 2333, 77th Cong., 2nd Sess., 46 (1942). It is clear that Congress was focusing on continuous payments made out of the husband's income, rather than capital divisions of marital property. In the instant case, the 10-year leasehold was essentially a surrender of the husband's income stream. If the husband is to be taxed on this income, it is consistent with legislative *449 purpose to include the lease payments in petitioner's income as section 71 alimony and grant the husband a corresponding deduction under section 215. It is clear from the facts and circumstances surrounding the divorce decree that the 10-year leasehold was in the nature of alimony rather than part of the property settlement. First, we note that the parties intended the leasehold to be in lieu of alimony or support. As we stated in Wright v. Commissioner, 62 T.C. at 389 (1974): "The intent of the parties is a necessary factor in determining the nature of the payment. Phinney v. Mauk, 411 F.2d 1196 (C.A. 5, 1969)." See also Weiner v. Commissioner, 61 T.C. 155 (1973); Hesse v. Commissioner, supra.
In their respective memorandum briefs filed before the Chancery Court for Jefferson County, Tennessee, each party expressed the purpose for creating the leasehold. After first suggesting the conveyance of certain property *450 to petitioner, John Rimmer's memorandum brief noted: In addition, the complainant should have adequate income to provide for her needs and that of her minor child. We feel that the suggestion of complainant's counsel that the complainant be awarded a ten-year leasehold in the business real estate is sound and equitable. This would provide a monthly income of $396.00 to the complainant and over the ten-year period would total $47,520.00, much more than the present valuation of said property. Petitioner's brief before the Chancery Court makes a similar recitation: In addition, we think that the Court should vest into Mrs. Rimmer a ten-year leasehold estate in and to the business real estate in which Mr. John A. Rimmer has an undivided one-half interest. The rental, which would then be payable to Mrs. Rimmer, of $396.00 per month, would amount to $4752.00 per annum, and assure to her sufficient funds for a living for ten years, and for the education and maintenance of Thomas Rimmer and John Rimmer, the minor sons of the parties. The respective positions of the parties before the Chancery Court contemplated the leasehold as providing the source for payments which would be *451 in the nature of alimony or support. The intent of the parties was also reflected in the decree itself: The Court is further of the opinion that by way of further alimony in solido, and to give to complainant funds for her livelihood and for the further support and education of her children, a ten-year leasehold estate should be created into the complainant out of the one-half interest owned by the defendant in the business real estate now leased to Tennessee Handbags, Inc., so that the complainant will receive from Tennessee Handbags, Inc., each month for ten years, the rental from said one-half interest, which is now by lease fixed at $396.00 per month. [Emphasis added]. While the labels attributed to payments made pursuant to the divorce decree are in no way conclusive or binding on us, Joslin v. Commissioner, 52 T.C. 231, 236 (1969), affd. 424 F.2d 1223 (7th Cir. 1970); Thompson v. Commissioner, 50 T.C. at 525; Newbury v. Commissioner, 46 T.C. 690 (1966), they nevertheless may have probative value in establishing the true nature of the payment. Furthermore, we note that in addition to the leasehold *452 payments, the decree granted petitioner a substantial interest in Tennessee Handbags, Inc., as well as other property. While petitioner's activity and contributions with respect to the business clearly entitle her to a substantial share in it, petitioner has failed to demonstrate that her property interests went beyond this settlement. We therefore, cannot hold that the leasehold was received in exchange for her property rights. See Hesse v. Commissioner, 60 T.C. 685 (1973); Thompson v. Commissioner,supra; Joslin v. Commissioner, supra.
Petitioner points to the fact that the payments made to her under the lease did not cease with the death of her husband or her own remarriage. While this factor must be given evidentiary weight, it does not conclusively establish that the payments in question were pursuant to a property settlement between the parties. Wright v. Commissioner, supra at 389; Hesse v. Commissioner, supra at 693. After weighing all of the evidence in the record, we hold that the payments made pursuant to petitioner's leasehold interest were in discharge of John A. *453 Rimmer's legal obligation arising out of his "marital or family relationship" within the meaning of section 71(a). Petitioner next contends that the payments stemming from the leasehold were not "periodic" within the meaning of section 71(a) and are therefore not includible in her income. Although the statute does not define the term "periodic payments," section 71(c) provides that installment payments discharging an obligation, the principal sum of which is specified in the decree, shall not be treated as periodic payments except where the payment period ends more than 10 years from the date of the decree. [9] Petitioner seeks to characterize the income from the leasehold as installment payments in discharge of a principal sum. Both parties agree that the payment period is 10 years or less. *454 While the principal sum may either be stated in the decree or be mathematically computable, Kent v. Commissioner, 61 T.C. 133 (1973), it must be a definite amount. Van Orman v. Commissioner, 418 F.2d 170 (7th Cir. 1969), affirming a Memorandum Opinion of this Court; Baker v. Commissioner, 205 F.2d 369 (2d Cir. 1953), rev'g in part 17 T.C. 1610 (1952). It is clear to us that there is no definite principal sum in the instant case. It is true that an approximation of the total amount payable under the leasehold (at the current rental) was stated in the decree but no amount was fixed as a principal sum. Nor could any principal sum be established. On April 10, 1967, the date of entry of the divorce decree, the lease had only 2 years and 5 months remaining until it expired on September 1, 1969. At that time, the lessee had the option to renew the contract for an additional 5 years at the same rental. If the lessee exercised the renewal option, the term of the lease would be extended from September 1, 1969 to September 1, 1974. However, at the end of the extended term, the contract terminated since only a single renewal *455 was provided in the contract. Each of these events, the renewal and the termination, was within the 10-year period during which the petitioner was to receive rental payments. Thus, when the decree was entered, it remained uncertain whether the lease would be renewed or if a new contract would be written when the lease expired. Furthermore, if a new lease were written, the amount of rental could change.In fact, the rental under the new lease differed considerably from the one which had expired. [10]
We believe the instant case bears some analogy to our decision in Lee v. Commissioner,10 T.C. 834 (1948). In that case, the husband agreed to pay his former spouse a specified percentage of his annual income for a 5-year period. We held that since the parties fixed no principal sum, the payments made under the agreement were not installment payments but periodic *456 payments within the meaning of the statute. See also Young v. Commissioner, 10 T.C. 724 (1948). Having concluded that the income from the 10-year leasehold awarded to petitioner in the divorce decree was periodic we find that these amounts are includible in her gross income under section 71. We therefore need not consider the includibility of the leasehold payments under section 61. Decision will be entered under Rule 155. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated. Respondent has conceded that petitioner is not liable for the penalty under sec. 6651(a).↩
2. Petitioner remarried in 1970. John Rimmer died on September 4, 1973.↩
3. The decree stated the following with respect to child support: The Court makes no award for child support, the Court being of the opinion that the award of property, in solido, to the complainant, as herein set forth, is sufficient to enable her to support said children.↩
4. SEC. 71. ALIMONY AND SEPARATE MAINTENANCE PAYMENTS. (a) GENERAL RULE.-- (1) DECREE OF DIVORCE OR SEPARATE MAINTENANCE.--If a wife is divorced or legally separated from her husband under a decree of divorce or of separate maintenance, the wife's gross income includes periodic payments (whether or not made at regular intervals) received after such decree in discharge of (or attributable to property transferred, in trust or otherwise, in discharge of) a legal obligation which, because of the marital or family relationship, is imposed on or incurred by the husband under the decree or under a written instrument incident to such divorce or separation.↩
5. For a detailed discussion of the "support" requirement as of 1970, see Harris, "The Federal Income Tax Treatment of Alimony Payments - The 'Support' Requirement of the Requlations" 22 Hastings L.J. 53↩ (1970).
6. SEC. 215. ALIMONY, ETC., PAYMENTS. (a) GENERAL RULE.--In the case of a husband described in section 71, there shall be allowed as a deduction amounts includible under section 71 in the gross income of his wife, payment of which is made within the husband's taxable year. * * * ↩
7. For a discussion of some of the factors considered by the courts see H. Gutman and F. Sander, DIVORCE AND SEPARATION, A11-A13, (Bureau of National Affairs Tax Management Portfolio No. 95 3rd ed. 1975).↩
8. Prior to the statutory revision in 1942, Gould v. Gould, 245 U.S. 151↩ (1917) had held that alimony payments were neither taxable to the wife nor deductible by the husband.
9. The alimony versus property settlement issue and the periodicity issue overlap to a substantial degree. Both the requirement that the payments be periodic, and the requirement that they be made in discharge of a marital or family obligation, attempt to achieve the same basic result, viz., to differentiate between capital transfers and those recurrent alimony payments which the husband must make from his income. The regulations attempt to refine this process further by providing that even if the payments discharging the principal sum are made over a period of 10 years or less, they will nevertheless be characterized as periodic payments if (1) they are subject to certain contingencies characteristic of alimony or support payments rather than capital divisions, and (2) they are in the nature of alimony. The precise language of this part of the regulations reads as follows: (3)(i) Where payments under a decree, instrument, or agreement are to be paid over a period ending 10 years or less from the date of such decree, instrument, or agreement, such payments are not installment payments discharging a part of an obligation the principal sum of which is, in terms of money or property, specified in the decree, instrument, or agreement (and are considered periodic payments for the purposes of section 71(a)) only if such payments meet the following conditions: (a) Such payments are subject to any one or more of the contingencies of death of either spouse, remarriage of the wife, or change in the economic status of either spouse, and (b) Such payments are in the nature of alimony or an allowance for support. [Sec. 1.71-1(d)(3), Income Tax Regs.↩]
10. Indeed, when the opinion of the Chancellor was issued it noted that the rent was "now" $396 per month, obviously contemplating some change when and if the lease was renewed. In fact, in 1974, the lease was renewed, and petitioner's share of the rent increased from $396 per month to $612 per month.↩