MITZI EVA MARIA KARAGEORGEVITCH (FORMERLY MRS. MITZI LOWE), Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent; FRANK LOWE and DIANA LOWE, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Karageorgevitch v. Commissioner
Docket Nos. 2731-78, 4546-78.
United States Tax Court
T.C. Memo 1979-251; 1979 Tax Ct. Memo LEXIS 274; 38 T.C.M. (CCH) 1003; T.C.M. (RIA) 79251; July 2, 1979, Filed Mitzi Eva Maria Karageorgevitch, *275 pro se. John E. Judge, for the petitioner in docket No. 4546-78. James M. Eastman, for the respondent. DAWSON
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Judge: These consolidated cases were assigned to and heard by Special Trial JudgeLehman C. Aarons, pursuant to the provisions of section 7456(c) of the Internal Revenue Code of 1954, as amended, [1] and General Order No. 6 of this Court, 69 T.C. XV. [2] The Court agrees with and adopts the Special Trial Judge's opinion which is set forth below. OPINION OF SPECIAL TRIAL JUDGE
AARONS, Special Trial Judge: Respondent determined deficiencies in Docket No. 2731-78 in petitioner's federal income tax for 1974 and 1975 in the respective amounts of $4355 and $6491. Respondent determined deficiencies in Docket No. 4546-78 in petitioners' federal income tax for 1974 and 1975 in the *276 respective amounts of $4387 and $6405. Certain issues have been conceded. The only issue remaining for decision herein is whether certain payments made in 1974 and 1975 by petitioner Frank Lowe to petitioner Mitzi Eva Maria Karageorgevitch (formerly Mrs. Mitzi Lowe) were includable in her income under section 71 and deductible by the payor under section 215 of the Code. Regardless of the outcome, because of a concession by respondent, a recomputation will be necessary in Docket No. 4546-78 under Rule 155 of this Court's Rules of Practice and Procedure. FINDINGS OF FACT Some of the facts were stipulated by the parties and are so found. We will summarize below only those facts necessary to an understanding of this opinion. Petitioner Mitzi Eva Maria Karageorgevitch (formerly Mrs. Mitzi Lowe and hereinbelow "Mitzi") resided in Palm Springs, California at the time she filed her petition herein. Petitioners Frank and Diana Lowe resided in El Segundo, California at the time they filed their petition herein. Frank Lowe is hereinbelow referred to as "Frank". Frank paid Mitzi $11,500 in 1974 and $12,000 in 1975, and the single issue to be decided is the taxability of these *277 payments to Mitzi and the deductibility of the payments to Frank. Frank and Mitzi were married in 1955. They resided in California during their marriage. The marriage was dissolved by a decree dated March 18, 1974. An interlocutory decree (hereinbelow "the decree") had been entered on November 19, 1973. On December 9, 1972 Frank and Mitzi had executed a property settlement agreement and addendum thereto (hereinbelow "the agreement"). The agreement provided for a division of the community property and an express waiver by Mitzi of "any and all rights and claims against husband for her support and maintenance (spousal support)." Included in the property to be received by Mitzi was $386,000 in savings account deposits or other cash assets. Additionally Mitzi was to receive the Palm Springs residence and other specified property. Frank was to receive all the parties' interest in his medical practice, any additional savings account balances, and other designated properties (including two second deeds of trust having a face value of approximately $117,000.) Provision for support of the two minor children was made in the agreement, but no specific reference was made to their college *278 education. Just prior to the November 19, 1973, decree Mitzi, Frank and their attorneys conferred "on the courthouse steps" and agreed on certain changes in their financial arrangements. It appears that Frank was then in need of additional cash. The parties agreed, and it was so reflected in the decree, that Frank would receive $55,000 out of the savings accounts which would otherwise have gone to Mitzi under the agreement. Frank agreed specifically that he would pay for the children's college education. He further agreed that the two second deeds of trust would go to Mitzi. And the departure from the agreement which is most significant to this case, was the following paragraph contained in the decree: Petitioner [Frank] shall pay to Respondent [Mitzi] the sum of Fifteen Hundred Dollars ($1,500.00) per month commencing November 1, 1973 for a period of twenty-one (21) consecutive months, as Respondent's maintenance and support. Said 21 monthly payments will be paid to Respondent or her legal representative though she should remarry or die. At the conference prior to the hearing in the interlocutory proceeding, Frank made some handwritten calculations, which he gave to *279 Mitzi, demonstrating that the 21 payments of $1500 would total $31,500 and that the projected cost of the children's college education would be $20,000. The second deeds of trust were known to be of little or no value. However, it appears to have been the parties' intent that Mitzi would receive monetary benefits from Frank approximating the $55,000 of cash which she relinquished to Frank under the decree. OPINION Mitzi contends that the 21 monthly payments constituted a part of a division of property and was never intended as "alimony" taxable to her. Frank contends that the decree must be read literally, and that the monthly payments were intended as deductible alimony. Respondent's position herein is a neutral one. The federal tax law applicable in this case is clear. Section 215(a) allows a husband to deduct amounts paid to the wife when the amounts are includable under section 71 in the gross income of the wife. Section 71(a) includes in the wife's income periodic payments received in discharge of a legal obligation which, because of the marital or family relationship, is incurred by the husband. For purposes of section 71(a), section 71(c)(1) excludes installment *280 payments in discharge of a principal sum of money specified in a decree from the term "periodic payments." Section 1.71-1(d)(3), Income Tax Regs., however, provides an exception to the rule contained in section 71(c)(1). Under that exception, the term "periodic payments" includes installment payments of a principal sum specified in a decree if (1) the payments are subject to termination upon the occurrence of one or more of the contingencies of death of either spouse, remarriage of the wife, or change in economic status of either spouse; and (2) the payments are in the nature of alimony. Contingencies imposed by local law are sufficient for purposes of the exception. Thus, the issues are whether the payments in question were (1) alimony, i.e. payments in discharge of a legal obligation which Frank incurred because of the marital or family relationship; and (2) "periodic" because under California law they were subject to contingency of Frank's death. (The decree itself states that the payments were not subject to the contingency of Mitzi's death or remarriage.) Both issues must be answered in the affirmative in order for Frank to be entitled to a deduction pursuant to section 215(a) *281 and for Mitzi to be required to include the amounts in income pursuant to section 71. Payments which effect a property division or which satisfy property rights are neither includable in the wife's gross income under section 71(a) nor deductible by the husband under section 215 since the amounts paid are capital in nature. Thompson v. Commissioner,50 T.C. 522 (1968). Whether the payments in question were in discharge of a legal obligation which Frank incurred because of the marital or family relationship (i.e., alimony) or whether they were in consideration of Mitzi's property interest in the $55,000 which she relinquished is a question of fact. Ryker v. Commissioner,33 T.C. 924 (1960). In resolving the factual question whether particular payments are in the nature of alimony or of a property settlement, courts have utilized a myriad of factors. The critical factor is the intent of the parties. Wright v. Commissioner,62 T.C. 377, 389 (1974), affd. 543 F.2d 593 (7th Cir. 1976). In determining such intent Courts have looked to (1) presence of fixed or determinable sum; (2) other division of property; (3) whether *282 the payments are related to the husband's income; (4) continuation of payments regardless of contingencies; (5) negotiations preceding the divorce; and (6) similarity of payments before and after entry of the divorce decree. See Ryker v. Commissioner,supra;Bardwell v. Commissioner,38 T.C. 84 (1962), affd. 318 F.2d 786 (10th Cir. 1963); Wright v. Commissioner,supra.[3] California courts have similarly searched for the true intent of the parties in determining whether payments labelled as alimony are in truth a part of an overall division of property. See Hamilton v. Hamilton,94 Cal. App. 293; 210 P.2d 750, 753 (2d Dist. Ct. App. 1949). A weighing of all the factors in this case convinces us that the payments here in question were in the nature of a property settlement, and accordingly, we need not resolve the question whether the payments were "periodic payments." We do note that under the terms *283 of the decree the payments were not subject to the contingency of Mitzi's death or her remarriage. These factors alone are sufficient at least to raise a question in our mind as to whether they were not also intended to constitute an obligation of Frank's estate in the event he died during the 21 month period. We further note that the agreement contained a provision stating that it was binding on the heirs and executors of the parties. That provision of the agreement was not modified by the decree. We have come to the conclusion that the disputed payments were part of a property settlement rather than being in the nature of alimony, despite the characterization of those payments in the decree. Mitzi's attorney at the dissolution proceedings explained that the descriptive words "maintenance and support" were used for lack of better words. We find this explanation a surprising one, to say the very least. It would obviously have been to Mitzi's advantage (and might well have disposed of the issue herein) if, rather than the inept words which were selected, descriptive words had been omitted entirely.But the attorney was not a specialist in tax law, and the descriptive label is not *284 binding upon the Court. See Ryker v. Commissioner,supra.
On the basis of all relevant factors in this case, including the demeanor of the witnesses in presenting their conflicting testimony and including nearly all the factors enumerated above which courts have looked to in similar cases, we are convinced that the payments in question were part of a "package" transferred by Frank to Mitzi in exchange for her relinquishment of the previously agreed transfer by Frank to her of $55,000 in cash savings. As such, the payments in question were intended by both parties to be an integral part of a division of their property and not in the nature of alimony. In accordance with the foregoing, Decision will be entered for petitioner in docket No. 2731-78.
Decision will be entered under Rule 155 in docket No. 4546-78.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise noted. ↩
2. Pursuant to General Order No. 6 dated March 8, 1978, the post-trial procedures set forth in Rule 182 of this Court's Rules of Practice and Procedure are not applicable to this case.↩
3. See also Estate of Thoda v. Commissioner,T.C. Memo. 1979-219 (May 30, 1979); Riley v. Commissioner,T.C. Memo. 1979-237↩ (June 20, 1979).