BLANCHE CURTIS NEWBURY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

ALVIN L. NEWBURY AND JACQUELYN H. NEWBURY, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 1089–65, 1090–65.   Filed August 29, 1966.

Blanche Curtis Newbury, pro se, in docket No. 1089–65.
*Roger M. Carter*, for the petitioners in docket No. 1090–65.
*Williard A. Herbert*, for the respondent.

FAY, *Judge:* Respondent determined deficiencies in the income tax and additions to tax of petitioners, as follows:

| Docket No. | Year | Deficiency | Additions to tax, sec. 6651(a), I.R.C. 1954 |
|---|---|---|---|
| 1089–65 | 1959 | $724.00 | $181.00 |
|  | 1960 | 516.00 | 129.00 |
|  | 1961 | 400.00 | 100.00 |
|  | 1962 | 355.00 | 88.75 |
| 1090–65 | 1960 | 809.28 | ---------- |
|  | 1961 | 738.34 | ---------- |
|  | 1962 | 594.58 | ---------- |

Respondent concedes that petitioner in docket No. 1089–65 is not liable for an addition to tax under section 6651(a) of the Internal Revenue Code of 1954[1] for each of the years 1959, 1960, 1961, and 1962. Petitioners in docket No. 1090–65 did not contest certain adjustments set forth in the notice of deficiency. The sole issue for decision is whether certain amounts paid by Alvin L. Newbury to Blanche Curtis Newbury constitute payments made in discharge of a legal obligation to support after divorce, as defined in section 71, so as to be includable in the income of petitioner in docket No. 1089–65 pursuant to section 71(a)(1) and deductible by the petitioners in docket No. 1090–65 pursuant to section 215(a).

---

[1] Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954.

FINDINGS OF FACT

Petitioner Blanche Curtis Newbury (hereinafter referred to as Blanche) is a resident of Dallas, Tex.

Petitioners Alvin L. Newbury (hereinafter referred to as Alvin) and Jacquelyn H. Newbury, husband and wife, filed Federal joint income tax returns on the cash basis with the district director of internal revenue, Dallas, Tex., for 1960, 1961, and 1962.

On April 29, 1958, Blanche and Alvin were divorced. A judgment of divorce was entered on that date by the Domestic Relations Court of Dallas County, Tex.

The above-said judgment of divorce is divided into several sections bearing headings as follows:

| | |
|---|---|
| ARTICLE I | Property to Become Defendant's [Blanche] Separate Property from and After Entry of the Divorce Decree |
| ARTICLE II | Property to Become Plaintiff's [Alvin] Separate Property from and After Entry of the Divorce Decree |
| ARTICLE III | Property to be Delivered to the Defendant [Blanche] by the Plaintiff [Alvin] |
| ARTICLE IV | Plaintiff's [Alvin] Covenant to Amortize the Community Indebtedness |
| ARTICLE V | Child Custody and Child Support |
| ARTICLE VI | Contractual Alimony for the Defendant [Blanche] |
| ARTICLE VII | General Provisions |

Article I of the judgment of divorce provided, *inter alia*, that the following property would become the separate property of Blanche from and after the date of entry of the divorce decree:

*Property*

House and Lot described in (1) (a), subject to outstanding mortgage
Household goods, furniture, fixtures, etc., described in (1) (b)
1955 Buick sedan
Two promissory notes described in (1) (d)
302 Shares of Huey & Philp Hardware Co.
100 Shares of First National Bank of Corsicana
300 Shares of Georesearch Corporation
Cash

Article II of the judgment of divorce provided, *inter alia*, that the following property would become the separate property of Alvin from and after the date of entry of the divorce decree:

*Property*

House and lot described in (1) (a)
1957 Ford sedan
450 Shares of Newbury & Daniels, Inc.
Lot described in (1) (d)
Cash surrender value of insurance policy described in (1) (e)
Antique cannons, (1) (f)
Unsecured note described in (1) (g)
Unsecured notes described in (1) (h)
Four endowment policies described in (1) (j)

Article III of the judgment of divorce reads as follows:

As a further part of the consideration for the partition of the properties of the Parties hereto in accordance with the terms and provisions of Articles I and II hereof, and as a part of the inducement and consideration for the DEFENDANT agreeing thereto, the PLAINTIFF agrees that he will simultaneously with the execution of this agreement execute and deliver unto the DEFENDANT the following described promissory notes:

1. One certain promissory note bearing even date herewith in the principal sum of $12,500.00, executed jointly by Alvin L. Newbury and Mrs. F. B. Ingram, a widow, as co-makers, bearing interest at the rate of 5% per annum from date and payable in 84 equal monthly installments of $176.68 each, covering principal and interest, with the first installment being due and payable on or before the 1st day of May, 1958, and one installment being due and payable on or before the 1st day of each succeeding month thereafter until all principal and interest on said note shall have been paid in full.[2]

2. One certain promissory note bearing even date herewith in the principal sum of $1197.65, bearing interest at the rate of 5% per annum, payable in monthly installments of $79.85, covering principal and interest, with the first installment being due and payable on or before the 1st day of May, 1958, and a like installment being due and payable on or before the 1st day of each succeeding month thereafter until all principal and interest thereon shall have been paid in full, which note shall be executed by Alvin L. Newbury and Mrs. F. B. Ingram jointly as co-makers, payable to the order of DEFENDANT herein.[3]

3. One certain promissory note in the principal sum of $6200.00, executed by PLAINTIFF to DEFENDANT, bearing even date herewith, and payable in monthly installments of $50.00 each, without interest, the first installment being due and payable on or before the 1st day of May, 1958 and a like installment being due and payable on or before the 1st day of each succeeding month thereafter until such note shall have been paid in full.[4]

Each of the three notes above described shall provide for maturity at the option of the holder in the event of any default in payment as therein provided, and each of such notes shall provide for 10% additional on the principal and interest as attorneys fees if placed in the hands of an attorney for collection.

The purpose of the aforesaid promissory notes was to assure Blanche that Alvin would meet the following obligations which were imposed upon him by the judgment of divorce: (1) To pay off the $12,500 mortgage on the house awarded to Blanche in the divorce decree; (2) to pay off the $1,197.65 balance due on the title I loan that had been previously obtained to make improvements on the above-mentioned house; and (3) to pay to Blanche a sum of $6,200.

Article IV provided, *inter alia*, that Alvin (1) assume community indebtedness in the total amount of $1,880.79 [5] and (2) pay Blanche's attorney in the divorce proceeding $2,750 for his services rendered in such proceeding.

[2] This note will hereinafter be referred to as the mortgage note.
[3] This note will hereinafter be referred to as the title I note.
[4] This note will hereinafter be referred to as the dollar note.
[5] This amount represented all the indebtedness incurred by Blanche from the date of separation up to the date on which the judgment of divorce was executed.

By reason of articles I, II, III, and IV of the judgment of divorce, Blanche received as her separate property at least one-half of the value of the parties' total community property.

Article VI of the judgment of divorce provided as follows:

#### CONTRACTUAL ALIMONY FOR THE DEFENDANT [BLANCHE]

1. As a part of the consideration for DEFENDANT'S agreeing to the partition of properties hereinabove provided for, and for the purpose of making more equitable the share of property which DEFENDANT receives, the Parties hereto agree that PLAINTIFF shall simultaneously with the execution of this agreement become bound and obligated to pay to DEFENDANT the sum of $250.00 on the 1st day of May, 1958, and a like sum on the 1st day of each succeeding month thereafter until 124 such monthly installments shall have been paid; and thereafter, he shall be bound and obligated to pay and he hereby agrees to pay to DEFENDANT the sum of $300.00 on the 1st day of the 125th month next following May 1, 1958, and the sum of $300.00 on the 1st day of each succeeding month thereafter. The monthly payments provided for in this paragraph shall terminated [sic] upon the death of DEFENDANT unless DEFENDANT should remarry prior to her death, in which event such monthly payments shall terminate simultaneously with her remarriage.

Alvin made payments as follows:

| Year | Contractual alimony | Title I loan | House mortgage | Dollar note |
|------|-----|-----|-----|-----|
| 1959 | $2,750 | [1] $709.16 | $2,120.16 | $400 |
| 1960 | 3,000 | | 2,120.16 | 550 |
| 1961 | 2,835 | | 2,120.16 | 450 |
| 1962 | 2,015 | | 2,120.16 | 400 |

[1] Fully repaid by Sept. 1, 1959.

Blanche did not file income tax returns for the years 1959, 1960, 1961, and 1962. In his notice of deficiency, respondent determined that Blanche received alimony or payments in lieu of alimony in the amounts of $4,520 in 1959, $3,456 in 1960, $2,885 in 1961, and $2,625 in 1962, which constitute taxable income to her.

In their joint returns for 1960, 1961, and 1962, petitioners in docket No. 1090–65 deducted from their taxable income the amounts of $3,456, $3,465, and $2,625, respectively, as alimony. In his notice of deficiency, respondent determined that the above-said amounts were not deductible from said petitioners' taxable income.

#### OPINION

Blanche and Alvin were divorced on April 29, 1958, pursuant to a judgment of divorce entered by the Domestic Relations Court of Dallas County, Tex. Article VI of the judgment of divorce provided that Alvin was to pay Blanche "Contractual Alimony" in the sum of $250 per month for the first 124 months and $300 per month thereafter until the payments were terminated by Blanche's death or remarriage.

We must decide whether these payments are includable in Blanche's taxable income pursuant to section 71(a)(1)[6] and deductible from Alvin's taxable income pursuant to section 215(a).[7]

In his notices of deficiency, respondent took inconsistent positions as to these payments with respect to Blanche and Alvin; however, he argues on brief in favor of Blanche and against Alvin. Respondent contends (and Blanche as well) that the payments from Alvin to Blanche represent either (1) a division of property or (2) an *unenforceable* contractual obligation of continuing support after divorce; and, under either alternative, are neither includable in Blanche's income nor deductible from Alvin's income. Accordingly, we must first determine whether the monthly payments described in article VI were part of the community property division or for Blanche's support.

Where husband and wife in a community property State divide their property in a property settlement, the portion that the wife takes as her part of the community property is not for her support or in the nature of alimony since, under community property law, it already belongs to her. Whether payments are (1) for the purpose of support or (2) in consideration of an interest in community property is a question that turns on the facts. *Ann Hairston Ryker*, 33 T.C. 924 (1960). Careful scrutiny of the record convinces us that the monthly payments described in article VI of the judgment of divorce were, and were intended by the parties to be, for Blanche's support and were not part of the division of community property.[8] The judgment itself labeled the disputed monthly payments as "Contractual Alimony for the Defendant [Blanche]." Nevertheless, the language of article VI states that the monthly payments described therein were part of the consideration for (1) Blanche's agreeing to the property division and (2) making such division more equitable. We are not, however, bound by such language, especially when other provisions of the judgment of divorce make it equivocal. *Riddell* v. *Guggenheim*, 281 F. 2d 836 (C.A. 9, 1960).

The payments received by Blanche have all the attributes of support payments and, if it were not for the language in article VI, the question could be easily resolved. Other provisions of the judgment provide

---

[6] SEC. 71(a)(1) DECREE OF DIVORCE OR SEPARATE MAINTENANCE.—If a wife is divorced or legally separated from her husband under a decree of divorce or of separate maintenance, the wife's gross income includes periodic payments (whether or not made at regular intervals) received after such decree in discharge of (or attributable to property transferred, in trust or otherwise, in discharge of) a legal obligation which, because of the marital or family relationship, is imposed on or incurred by the husband under the decree or under a written instrument incident to such divorce or separation.

[7] SEC. 215(a) GENERAL RULE.—In the case of a husband described in section 71, there shall be allowed as a deduction amounts includible under section 71 in the gross income of his wife, payment of which is made within the husband's taxable year. * * *

[8] We note that, in the judgment of divorce, article VI was separated by article V (which concerns child custody and support) from the other provisions describing property which each party would receive.

for a division of the parties' community property and we have found as a fact that by reason of such other provisions Blanche actually received the cash equivalent of more than one-half of the total amount of the parties' community property. There is nothing in the record to indicate that Blanche had, or, at the time of the divorce, believed herself to have, any greater property right than that for which she was compensated by the provisions of the agreement other than that providing for the disputed payments (article VI).

Article VI does not specify any aggregate sum to be paid to Blanche in the form of regular monthly payments. It is not possible to compute any such aggregate sum because all payments provided for in said article would cease upon the death or remarriage of Blanche. All of these factors are relevant in the resolving of the question of whether or not the article VI payments were for the purpose of support, and we are inexorably led to the conclusion that said payments made to Blanche were "periodic payments" for her support and were not part of the division of community property.

Having concluded that the disputed monthly payments were for Blanche's support, we must decide whether they are includable in Blanche's income under section 71(a)(1) and deductible from Alvin's income under section 215(a). Respondent and Blanche maintain that these payments are not includable in her income since they were not in discharge of a legally imposed obligation of support. They base this contention on the grounds that there is no legal obligation to pay permanent alimony in Texas and that the payments in issue, if for support, would be considered to be permanent alimony in Texas.

The question presented herein was exhaustively considered in *Taylor* v. *Campbell*, 335 F. 2d 841 (C.A. 5, 1964), which involved facts similar to those presented in the case at bar. The Fifth Circuit decided that it was not Congress' intention in section 71 "to exclude from the coverage of this statute all payments which a Texas court would consider permanent alimony while otherwise providing for a nation wide deduction for identical payments." Instead, it concluded that the unenforceability of a postdivorce support agreement does not prevent the characterization of payments made pursuant thereto as alimony for purposes of sections 71(a)(1) and 215(a). The Fifth Circuit found support for its position in a report of the Senate Finance Committee (referring to the predecessor of sec. 71(a)), wherein it was stated:

These amendments are intended to treat such payments as income to the spouse actually receiving or actually entitled to receive them and to relieve the other spouse from the tax burden upon whatever part of the amount of such payment is under present law includable in his gross income. In addition, the amended sections will produce uniformity in the treatment of amounts paid in the nature of or in lieu of alimony regardless of variance in the laws of different States concerning the existence or continuance of an obligation to pay alimony.

696

[S. Rept. No. 1631, 77th Cong., 2d Sess., p. 83. See also H. Rept. No. 2333, 77th Cong., 2d Sess., p. 72]

We believe that *Taylor* v. *Campbell, supra,* correctly interprets section 71(a) and is, accordingly, controlling herein. (See also *Tuckie G. Hesse,* 7 T.C. 700 (1946), wherein this Court on equally similar facts reached the same conclusion as that of the Fifth Circuit in *Taylor* v. *Campbell.*) Therefore, we hold that the monthly payments described in article VI of the judgment of divorce are includable in Blanche's taxable income under section 71(a)(1) and deductible from Alvin's taxable income under section 215(a).

Article III of the judgment of divorce provided that, upon execution of the aforesaid judgment, Alvin was to execute and deliver to Blanche certain promissory notes drawn to her—to wit, the mortgage note, the title I note, and the dollar note.[9]

The mortgage note was payable in 84 equal monthly installments (or 7 years) from May 1, 1958. The title I note was payable in approximately 16 months (or 1⅓ years) from May 1, 1958. The dollar note was payable in 124 months (or 10⅓ years) from May 1, 1958.

Section 71(c)(1) states as follows:

(c) PRINCIPAL SUM PAID IN INSTALLMENTS.—

(1) * * * For purposes of subsection (a), installment payments discharging a part of an obligation the principal sum of which is, either in terms of money or property, specified in the decree, instrument, or agreement shall not be treated as periodic payments.

However, section 71(c)(2) modifies the foregoing provisions in the following manner:

(2) * * * If, by the terms of the decree, instrument, or agreement, the principal sum referred to in paragraph (1) is to be paid or may be paid over a period ending more than ten years from the date of such decree, instrument, or agreement, then (notwithstanding paragraph (1)) the installment payments shall be treated as periodic payments for purposes of subsection (a), but (in the case of any one taxable year of the wife) only to the extent of 10 percent of the principal sum. * * *

A reading of section 71(c) makes it clear that the payments made by Alvin on the mortgage note and on the title I note, which payments were to be made over a period ending less than 10 years from the date of the judgment of divorce, are not excepted from the operation of section 71(c)(1) by reason of section 71(c)(2). Moreover, there is nothing in the record to suggest that the principal sums of the mortgage and title I notes (1) were not payable absolutely and (2) were subject to any contingencies. Consequently, payments on those notes cannot be characterized as "periodic" within the meaning of section 71(a)(1). Therefore, payments on the mortgage and title I notes cannot, under any circumstances, be (1) includable in Blanche's taxable

---

[9] The purpose of these notes and the obligations which they represented have been fully described in our Findings of Fact.

income under section 71(a) (1) and (2) deductible from Alvin's taxable income under section 215(a).

We are left to consider the tax consequences to Blanche and Alvin resulting from payments by Alvin on the dollar note, since such payments, spread over a period of more than 10 years, are specifically excepted by section 71(c)(2) from the operation of section 71(c)(1) and are, therefore, treated as "periodic payments" for purposes of section 71(a). In the instant case, such question requires us first to consider whether payments on the dollar note were part of the community property division or for Blanche's support.

Article III appears in that portion of the judgment of divorce which ostensibly provides for the division of the parties' community property—it even precedes the section (article IV) which provides for the division of community indebtedness. Not only does the language in article III state that the notes described therein were a "further part of the consideration for the partition of the properties of the Parties * * * *in accordance with the terms and provisions of Articles I and II hereof* [Emphasis supplied]," but the article itself is labeled "Property To be Delivered To The Defendant [Blanche] by the Plaintiff [Alvin]." Due to (1) the particular juxtaposition of the section providing for the dollar note in the judgment of divorce (article III), (2) the labeling of that section, and (3) the language contained therein—especially that relating to articles I and II—we are led to conclude that Alvin and Blanche intended article III to comprise part of the division of their community property.

Although Alvin's testimony (which we believe, in general, to be creditable and reliable) indicates that Blanche may have received, at the least, one-half of the parties' community property by reason of articles I, II, and IV alone, there is no other evidence in the record to substantiate such fact. Due to the absence of evidence corroborating values of property testified to, and relying upon our conclusion above as to the parties' actual intent with respect to payments described in article III, we cannot say with any degree of certitude (as we can and did with respect to the payments pursuant to article VI) that payments on the dollar note were not, in fact, part of the community property division. Accordingly, payments on the dollar note cannot be characterized as being in the nature of alimony, and, therefore, are not (1) includable in Blanche's taxable income under section 71(a)(1) and (2) deductible from Alvin's taxable income pursuant to section 215(a).

*Decisions will be entered under Rule 50.*