WILLIAM M. JOSLIN, SR., PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 1394–67. Filed May 12, 1969.

*Frank J. Smith*, for the petitioner.
*James F. Hanley, Jr.*, for the respondent.

OPINION

STERRETT, *Judge:* The respondent determined a deficiency in the petitioner's income tax for the calendar year 1963 in the amount of $1,666.11. This proceeding was submitted under Rule 30 of the Court's Rules of Practice.

The error assigned by the petitioner with respect to the respondent's determination is as follows:

(a) The Commissioner erred in his determination that payments made by petitioner to his divorced wife totaling $2700.00 are not periodic payments under Section 71(c) and that petitioner is therefor not entitled to any deduction for such payments under Section 215.

Thus, the issues for decision are whether the installment payments involved herein qualify as "alimony" for Federal income tax purposes, and if so, whether such payments further qualify as periodic payments within the meaning of section 71(a) of the Internal Revenue Code of 1954 [1] by reason of being payable over a period in excess of 10 years as required by section 71(c)(2).

All of the facts have been stipulated by the parties. The stipulated facts and the exhibits attached thereto are incorporated herein by this reference and are adopted as our findings of fact. A summary of the pertinent facts is set forth below.

At the time of filing his petition herein, William M. Joslin, Sr. (hereinafter referred to as petitioner), was a resident of Elmwood Park, Ill. He filed his individual Federal income tax return for the calendar year 1963 with the district director of internal revenue at Chicago, Ill. Petitioner married Dorothy McCooey (hereinafter referred to as Dorothy) on January 28, 1956, in Oak Park, Ill. On January 21, 1960, an agreement was entered into between petitioner and Dorothy, who at the time were living separate and apart, in anticipation of Dorothy's bringing an action for divorce in Nevada.

This agreement states that Dorothy had contributed $17,269.70 toward the purchase of a residence then owned by the parties; that Dorothy was a joint obligor with petitioner on a note issued to purchase said residence; that certain listed items of furniture and equipment were Dorothy's separate property; and that the parties had a joint checking account with a balance of $785.

The agreement then recites that the parties desire to settle for all time their respective rights to the property owned by them without a judicial determination. In that regard, the agreement provides that the petitioner agrees to reimburse Dorothy for the funds she contributed toward the purchase of their residence; to return Dorothy's furniture to her; to pay $1,500 of attorney's fees incurred in connection with the property settlement and proposed divorce action; to permit immediate withdrawal by Dorothy of the balance in their checking account; to obtain a release of her obligation on the note on their former residence; and to pay their joint income tax liability for 1959. In return, Dorothy agrees to sign their joint income tax return for 1959; to assign her interest in their former residence to petitioner; and to pay all expenses incurred in obtaining a Nevada divorce, with the exception of the attorney's fees in the amount of $1,500 that petitioner previously agreed to pay.

[1] Unless otherwise indicated, all future statutory references are to the Internal Revenue Code of 1954.

All of the above-mentioned provisions were carried out by the parties, in whole or in part, prior to the entry of the divorce decree herein with the exception of the petitioner's obligations to reimburse Dorothy for her contribution toward purchase of their former residence, to obtain a release of her obligation on their house note, and to pay the $1,500 of attorney's fees.

In addition to the above provisions dealing with the division of the parties' property, paragraph 1(c) of the agreement provides:

1. Husband agrees:

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

(c) To pay to Wife, in addition to the sum set forth (a) above the sum of Twenty-Seven Thousand and No/100ths Dollars ($27,000.00) in monthly payments of Two Hundred Twenty-Five and No/100ths Dollars ($225.00) per month beginning on the first day of the month succeeding the month in which a Decree of Divorce in favor of the Wife may be entered and subsequent payments to be due on the first day of each and every month thereafter until said sum of Twenty-Seven Thousand and No/100ths Dollars ($27,000.00) shall be fully paid. In the event that Husband fails to pay any of said monthly installments Wife may at her option declare the unpaid balance immediately due and payable. In case of Husband's death prior to the death of Wife, any unpaid balance of said payments shall be and continue to remain an obligation of Husband's estate.

The last of the monthly payments described above is scheduled to be made on March 1, 1970.

The agreement further states:

2. Wife agrees:

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

(d) To accept payments required herein as a lump sum property settlement and alimony in gross, as full settlement of all her rights in and to the property of Husband, both real and personal, and in satisfaction of all claims and demands of every character arising out of the marital status of the parties hereto, including costs, temporary alimony, permanent alimony, support and maintenance, right of family allowance, right to inherit, and all claims of every other character and description held by Wife against Husband, save as herein provided.

The parties concluded their agreement with the following provisions:

3. Both parties agree:

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

(c) That upon the entry of a decree of divorce as contemplated herein all the right, title, claim and interest of each party in and to the property of the other, real, personal or mixed, that he or she now owns or may hereinafter acquire, by way of dower, homestead, jointure or otherwise, except the rights granted to each by the provisions of the Decree of Divorce, shall be forever barred, terminated, ended and released.

(d) That this Agreement subject to the approval of the court, or such parts thereof as the courts shall deem pertinent, shall be made a part of any Decree of Divorce to be entered between the parties hereto, in lieu of any and all other provisions for either division of property or alimoney.

On March 15, 1960, petitioner and Dorothy were divorced. Pertinent provisions of the decree effecting the divorce are set forth below:

No. 184921                                                     Dept. No. 3

IN THE SECOND JUDICIAL DISTRICT COURT OF THE STATE OF NEVADA IN AND FOR THE COUNTY OF WASHOE

DOROTHY M. JOSLIN, Plaintiff,
vs.
MURRAY JOSLIN, Defendant.

FINDINGS OF FACT, CONCLUSIONS OF LAW AND DECREE OF DIVORCE

\*          \*          \*          \*          \*          \*          \*

FINDINGS OF FACT

\*          \*          \*          \*          \*          \*          \*

3. All matters concerning the property rights of the parties have been settled by an agreement in writing dated January 21, 1960.

\*          \*          \*          \*          \*          \*          \*

CONCLUSIONS OF LAW

\*          \*          \*          \*          \*          \*          \*

2. That the agreement dated January 21, 1960, be approved.

\*          \*          \*          \*          \*          \*          \*

LET JUDGMENT BE ORDERED ACCORDINGLY.

Now, THEREFORE, by virtue of the law and the facts, it is hereby ORDERED, ADJUDGED AND DECREED as follows:

\*          \*          \*          \*          \*          \*          \*

2. That the agreement dated January 21, 1960, settling the property rights of the parties be, and the same hereby is, approved by the Court, and the parties are ordered and directed to comply with the terms thereof.

\*          \*          \*          \*          \*          \*          \*

DONE IN OPEN COURT this 15th day of March, 1960.

GRANT L. BOWEN
*District Judge*

During 1963, petitioner made 12 monthly payments of $225 each for a total of $2,700 to Dorothy. In computing his income tax for the year 1963, petitioner deducted said payments under "Other Deductions" designating same as "12 monthly payments of $225 under divorce settlement contract."

In his notice of deficiency dated December 27, 1966, respondent disallowed petitioner's claimed deduction for the payments to Dorothy giving the following explanation for this adjustment:

(a) It is determined that payments totaling $2,700.00 made by you in 1963 to your former wife, Dorothy McCooey, are not periodic payments under section 71(c) and therefore you are not entitled to any deduction for such payments under section 215.

Pursuant to the provisions of section 215(a)[2] of the Code a husband is entitled to deduct from his taxable income periodic payments paid to his divorced wife in discharge of a legal obligation arising out of the marital relationship and "imposed on or incurred by the husband under the decree or under a written instrument incident to * * * [a] divorce." Sec. 71(a)(1) of the Code.[3]

Section 71(a)(1) had as its progenitor section 22(k) of the Internal Revenue Code of 1939 which section was added to that Code by section 120 of H.R. No. 7378, which on enactment became the Revenue Act of 1942. The Senate Finance Committee report accompanying H.R. No. 7378 gave, in part, the following explanation of the embryonic section 22(k).

This section, * * * adds a new section * * * to provide in certain cases a new income tax treatment *for payments in the nature of, or in lieu of, alimony or an allowance for support* as between divorced or legally separated spouses.

  *   *   *   *   *   *   *

*Periodic payments,* * * * received by the wife subsequent to the decree, in discharge of, * * * a legal obligation which, because of the marital or family relationship, is imposed upon or incurred by such husband * * * are defined * * * as *gross income of the wife. This section applies only where the legal obligation being discharged arises out of the family or marital relationship in recognition of the general obligation to support,* which is made specific by the instrument or decree. This section *does not apply to that part* of any periodic *payment attributable to any interest in the property so transferred,* which interest originally belonged to the wife, * * * [Emphasis supplied. S. Rept. No. 1631, 77th Cong., 2d Sess., pp. 83–84.]

The language of section 71(a)(1) is in all material respects identical to that of its predecessor.

The parties have made an issue over whether the payments in question arise out of the husband's legal obligation resulting from the marital relationship, commonly known as alimony, or merely represent a settlement of their respective property rights.

Unfortunately, for our present purposes, the separation agreement does not spell out the answer to this problem. For example, the agree-

---

[2] SEC. 215. ALIMONY, ETC., PAYMENTS.

(a) GENERAL RULE.—In the case of a husband described in section 71, there shall be allowed as a deduction amounts includible under section 71 in the gross income of his wife, payment of which is made within the husband's taxable year. No deduction shall be allowed under the preceding sentence with respect to any payment if, by reason of section 71(d) or 682, the amount thereof is not includible in the husband's gross income.

[3] SEC. 71. ALIMONY AND SEPARATE MAINTENANCE PAYMENTS.

(a) GENERAL RULE.—

(1) DECREE OF DIVORCE OR SEPARATE MAINTENANCE.—If a wife is divorced or legally separated from her husband under a decree of divorce or of separate maintenance, the wife's gross income includes periodic payments (whether or not made at regular intervals) received after such decree in discharge of (or attributable to property transferred, in trust or otherwise, in discharge of) a legal obligation which, because of the marital or family relationship, is imposed on or incurred by the husband under the decree or under a written instrument incident to such divorce or separation.

ment at one point refers to all payments provided thereunder "as a lump sum property settlement and alimony in gross." As the foregoing quoted legislative history makes clear, the distinction between the payment of alimony and payments in satisfaction of the wife's property rights can be transcendent from a tax point of view. However, nowhere in the agreement do the parties indicate whether the contested payments (provided for under paragraph 1(c) of the agreement) were intended to be included in the former or the latter category. The divorce decree further obfuscates the characterization problem in referring to the agreement as having settled the "property rights" of the parties, but making no mention of any action having been taken with respect to Dorothy's alimony rights.

The determination of whether the instant payments constitute alimony for Federal tax purposes rests upon the surrounding facts. *Blanche Curtis Newbury*, 46 T.C. 690, 694 (1966); *Ann Hairston Ryker*, 33 T.C. 924, 929 (1960). In making this factual determination, we are not bound by the labels attached to such payments by the parties in their agreement, nor by the references thereto in the divorce decree, nor by the characterization of such payments under State law. *Bardwell* v. *Commissioner*, 318 F.2d 786 (C.A. 10, 1963), affirming 38 T.C. 84 (1962); *Wilma Thompson*, 50 T.C. 522 (1968); *Blanche Curtis Newbury, supra* at 694; *Ann Hairston Ryker, supra* at 929.

In *Wilma Thompson, supra* at 525, we said:

That the payment in question is referred to as alimony in the State court decree is not conclusive. *Blanche Curtis Newbury, supra.* The text of section 71 does not use the word alimony but prescribes only that payments in discharge of legal obligations which are imposed because of the family relationship are includable in the gross income of the wife. The regulations amplify the statute by explaining that section 71(a) applies only to payments made because of the marital relationship and in recognition of the general obligation to support. Sec. 1.71–1(b)(4), Income Tax Regs. * * *

In *Bardwell* v. *Commissioner, supra,* the Court of Appeals for the 10th Circuit at page 789, stated its premise as follows:

The primary contention of petitioner is that under Colorado law the effect of the language used in the agreement is that these payments are not alimony. * * * We do not agree, however, that the tax incidences of these payments under 26 U.S.C. § 71(a)(1) are to be governed by the rules of the state law. It is clear that one of the purposes intended by Congress in initially enacting this provision was that there would be uniformity of tax treatment for situations arising in the several states. * * *

We conclude that the payments involved herein qualify as alimony for Federal income tax purposes. The preface of the agreement sets forth all property owned by Dorothy either separately or jointly with the petitioner. The subsequent material provisions of the agreement, with the exception of paragraph 1(c), then appear to return to

Dorothy such joint and separate property, or its cash equivalent as belonged to her. Under these provisions, Dorothy is, in effect, fully compensated for her entire property interest and returned to the position of property ownership she occupied prior to the marriage. On the other hand, there is nothing in the agreement connecting the payments provided in paragraph 1(c) with any property interest held by Dorothy. She did not have a community property interest in any property acquired during the marriage. Indeed, the record is barren of any evidence that she had any greater property right than that for which she was compensated by the provisions of the agreement exclusive of paragraph 1(c). Careful scrutiny of the record leads us to the conclusion that the disputed payments were, and were intended by the parties to be, for the support of Dorothy.

Having qualified the payments as alimony payable in satisfaction of his obligation to support is not enough in itself to carry the day for the petitioner. He must further show that such payments are periodic payments imposed by the divorce decree or under a written instrument incident to such divorce decree within the meaning of section 71(a)(1). Where a principal sum is involved, as here, section 71(c) [4] permits the installment liquidation of said sum to qualify as periodic payments if the payout period exceeds 10 years. The last installment payment due herein is payable on March 1, 1970. Thus for petitioner to prevail on the ultimate issue, he must show that the obligation to pay commenced prior to March 1, 1960. Therefore, if the obligation to pay is founded on the separation agreement which is dated January 21, 1960, the taxpayer will have met the 10-year requirement, whereas if the obligation to pay is founded on the divorce decree which is dated March 15, 1960, he will have failed. What then is the basis for petitioner's obligation to pay?

*Gordon L. Munderloh*, 48 T.C. 452 (1967), holds that we must examine the applicable State law and intent of the parties as evidenced by the language used by them in their agreement to determine the source of the obligatory payments.

---

[4] Sec. 71(c) provides as follows:

SEC. 71. ALIMONY AND SEPARATE MAINTENANCE PAYMENTS.

(c) PRINCIPAL SUM PAID IN INSTALLMENTS.—

(1) GENERAL RULE.—For purposes of subsection (a), installment payments discharging a part of an obligation the principal sum of which is, either in terms of money or property, specified in the decree, instrument, or agreement shall not be treated as periodic payments.

(2) WHERE PERIOD FOR PAYMENT IS MORE THAN 10 YEARS.—If, by the terms of the decree, instrument, or agreement, the principal sum referred to in paragraph (1) is to be paid or may be paid over a period ending more than 10 years from the date of such decree, instrument, or agreement, then (notwithstanding paragraph (1)) the installment payments shall be treated as periodic payments for purposes of subsection (a), but (in the case of any one taxable year of the wife) only to the extent of 10 percent of the principal sum. * * *

· We gave consideration, initially, to the law of Nevada, the State in which Dorothy resided at the time of the divorce and the forum for the divorce proceeding. The statutes of Nevada authorize a husband and wife to alter their respective property rights by contract and further to enter into a separation agreement providing for the support of either of them *"during such separation."* (Emphasis supplied.) Nev. Rev. Stat. sec. 123.080(1) (1957).[5] We deem significant the omission from the statute of any language granting unto a husband and wife the right to contract in such a fashion as to bind the divorce court with respect to the amount of post-divorce support payments. In fact, the Nevada statutes specifically empower the divorce court to award such alimony and set apart such portion of the husband's property for the support of the wife as it shall deem just and equitable. Nev. Rev. Stat. sec. 125.150 (1) and (3) (1957).[6]

The complete power of the divorce court in Nevada in setting the amount of post-divorce alimony is perhaps best illustrated in *Day* v. *Day*, 80 Nev. 386, 395 P. 2d 321 (1964), where the parties specifically contracted in their separation agreement that said agreement was *not* to be merged into any decree of divorce. In a subsequent action by the wife to enforce the support provision, the issue arose as to whether the action was based upon the agreement or the divorce decree which adopted the agreement. The Supreme Court of Nevada held that "the survival provision of an agreement is ineffective" and hence the action by the wife was based upon the decree.

To the same effect is *Ballin* v. *Ballin*, 78 Nev. 224, 371 P. 2d 32, 36 (1962), and *Lewis* v. *Lewis*, 53 Nev. 398, 2 P. 2d 131 (1931). In *Lewis* v. *Lewis, supra* at 136, the court states the point as follows:

It is our opinion that the trial court in no instance is bound by the written agreement of the parties to a divorce action. It may or it may not adopt, according to its judgment, wisdom, and discretion, such written agreement if it deems the same to satisfactorily care for the interests of the respective parties to the action and the minor children, if any. It is not bound to do so, however, and may, in its discretion, cast aside and refuse to adopt any such agreement which the parties might have, with the utmost good faith, entered into. * * *

---

[5] 123.080 Contract altering legal relations: Separation agreement: consideration; introduction in evidence in divorce action.

1. A husband and wife cannot by any contract with each other alter their legal relations except as to property, and except that they may agree to an immediate separation and may make provision for the support of either of them and of their children during such separation.

[6] 125.150 Alimony and adjudication of property rights; award of attorney's fee; subsequent modification by court on stipulation of parties.

1. In granting a divorce, the court may award such alimony to the wife and shall make such disposition of the community property of the parties as shall appear just and equitable, having regard to the respective merits of the parties and to the condition in which they will be left by such divorce, and to the party through whom the property was acquired, and to the burdens, if any, imposed upon it, for the benefit of the children.

\*        \*        \*        \*        \*        \*

3. The court may also set apart such portion of the husband's property for the wife's support and the support of their children as shall be deemed just and equitable.

The petitioner attempts to discredit the *Lewis* case on the grounds that the applicable Nevada statute has been modified since that decision. However, the statutory revision does not affect the instant controversy since the change occurred with respect to the divorce court's power to dispose of the parties' separate property, but in no way dilutes the court's power to award such post-divorce alimony as it deems fit.

Our construction of the applicable Nevada law alone would, of course, prevent the petitioner from prevailing in the instant matter. But even assuming *arguendo* Nevada law to be otherwise, petitioner would likewise fail with respect to the intention of the parties as evidenced by the language of the agreement involved herein.

Petitioner stresses the use of the present tense by the parties in their agreement (e.g., "Husband agrees"; "Wife agrees"; "Both parties agree") as evidencing their intention to create a present obligation arising immediately upon the execution of the agreement. To further support his contention that the husband's obligation was founded upon the agreement, petitioner points out that some duties arising out of the agreement were performed by the parties prior to entry of the divorce decree. However, we note that all such duties involved the settlement of the parties' property rights. It may well be that the portions of the agreement constituting a property settlement gave rise to immediate rights and duties upon execution of the agreement. Such an interpretation would be consistent with the previously discussed Nevada statute authorizing the parties to enter into a permanent settlement of their property rights. See Nev. Rev. Stat. sec. 123.080(1) (1957), quoted above in fn. 5.

With respect at least to the alimony payments in controversy, the parties themselves seem to recognize by the following language that the divorce court retained the power to set aside their agreement:

3. Both parties agree:

\*       \*       \*       \*       \*       \*       \*

(d) That this Agreement *subject to the approval of the court, or such parts thereof as the courts shall deem pertinent,* shall be made a part of any Decree of Divorce to be entered between the parties hereto, in lieu of any and all other provisions for either division of property or alimony. [Emphasis supplied.]

Petitioner's reliance upon *Spicknall's Estate* v. *Commissioner*, 285 F. 2d 561 (C.A. 8, 1961), reversing a Memorandum Opinion of this Court; *Commissioner* v. *Blum*, 187 F. 2d 177 (C.A. 7, 1951), reversing 10 T.C. 1131 (1948), certiorari denied 342 U.S. 819 (1951); and *Blum*

v. *Commissioner*, 177 F. 2d 670 (C.A. 7, 1949), reversing a Memorandum Opinion of this Court, is misplaced. *Spicknall's Estate* involved Missouri law. The two *Blum* cases involved Illinois law.[7] Neither of these two State laws is the same as the Nevada law involved herein.

In view of the foregoing, we conclude that the petitioner's obligation to make the installment payments at issue was founded upon the divorce decree, and consequently, such payments were not payable over a period in excess of 10 years pursuant to section 71(c)(2). Thus, the payments in controversy are not entitled to treatment as periodic payments within the meaning of section 71(a), and are not deductible by petitioner under section 215(a).

*Decision will be entered for the respondent.*

---

[7] To elaborate, in both *Blum* decisions the Court emphasized the fact that the provisions of the agreement were not explicitly set forth in the divorce decree, and that the divorce court reserved jurisdiction only for the purpose of enforcing the terms of such agreement. On the basis of these considerations, it was held that the husband's obligation arose from the agreement rather than the decree. Thus, the *Blum* decisions are distinguishable from the instant case. The Nevada statutes involved herein provide that where the divorce court approves the parties' agreement by reference, the decree shall have "the same force and effect and legal consequences as though the contract were copied into the decree." Nev. Rev. Stat. sec. 123.080(4) (1957).

