ENID P. MIRSKY, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

MARVIN MIRSKY AND ENID P. MIRSKY, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 1749–69, 5135–69.    Filed June 29, 1971.

*Joel Yonover*, for the petitioners.
*William L. Ringuette*, for the respondent.

668

OPINION

RAUM, *Judge:* 1. The principal question for decision is whether payments received by petitioner Enid P. Mirsky from her former husband pursuant to article III of the separation agreement and corresponding provisions of the divorce decree are includable in her gross income under section 71, I.R.C. 1954.[1] The Government contends that such payments, described as "alimony" in the agreement and decree, were "in discharge of * * * a legal obligation which, because of the marital or family relationship, is imposed on or incurred by the husband" within the meaning of section 71(a)(1). Petitioner, on the

---

[1] SEC. 71. ALIMONY AND SEPARATE MAINTENANCE PAYMENTS.

(a) GENERAL RULE.—

(1) DECREE OF DIVORCE OR SEPARATE MAINTENANCE.—If a wife is divorced or legally separated from her husband under a decree of divorce or of separate maintenance, the wife's gross income includes periodic payments (whether or not made at regular intervals) received after such decree in discharge of (or attributable to property transferred, in trust or otherwise, in discharge of) a legal obligation which, because of the marital or family relationship, is imposed on or incurred by the husband under the decree or under a written instrument incident to such divorce or separation.

\*     \*     \*     \*     \*     \*     \*

(c) PRINCIPAL SUM PAID IN INSTALLMENTS.—

(1) GENERAL RULE.—For purposes of subsection (a), installment payments discharging a part of an obligation the principal sum of which is, either in terms of money or property, specified in the decree, instrument, or agreement shall not be treated as periodic payments.

(2) WHERE PERIOD FOR PAYMENT IS MORE THAN 10 YEARS.—If, by the terms of the decree, instrument, or agreement, the principal sum referred to in paragraph (1) is to be paid or may be paid over a period ending more than 10 years from the date of such decree, instrument, or agreement, then (notwithstanding paragraph (1)) the installment payments shall be treated as periodic payments for purposes of subsection (a), but (in the case of any one taxable year of the wife) only to the extent of 10 percent of the principal sum. For purposes of the preceding sentence, the part of any principal sum which is allocable to a period after the taxable year of the wife in which it is received shall be treated as an installment payment for the taxable year in which it is received.

other hand, argues that the payments, although labeled "alimony" in the agreement and decree, were in fact intended as compensation for her property rights and therefore not within the contemplation of section 71(a)(1). If the payments may properly be classified as consideration paid to the wife for her property rights, there is no dispute that they are not covered by section 71(a). So much is in any event clear not only under section 1.71–1(c)(4), Income Tax Regs., which provides that section 71(a) does not apply to payments which are attributable to an interest in property which "originally belonged to the wife," but also under a well established line of cases recognizing that payments made in fulfillment of either a division of property or a property settlement (related to a divorce or separation) are capital in nature and are not includable in the wife's gross income under section 71. See *Ann Hairston Ryker*, 33 T.C. 924, 929; *Wilma Thompson*, 50 T.C. 522, 525; *Brantley L. Watkins*, 53 T.C. 349; *Lewis B. Jackson, Jr.*, 54 T.C. 125, 129; *Ernest H. Mills*, 54 T.C. 608, 615, affirmed 442 F. 2d 1149 (C.A. 10).

The payments in controversy fall into two categories: the larger payments aggregating $25,000 ($12,500 in 1964, $5,000 in 1965, $5,000 in 1966, and $2,500 in 1967) and the payments of $50 a week for the period January 14—June 1, 1964, aggregating $1,000. We consider the $25,000 payments first, and hold, on the record before us, that they were not intended as alimony, as that term is commonly understood, or in discharge of support or similar obligations contemplated by section 71(a)(1), but were rather compensation for petitioner's property rights.[2]

In our view of the record the payments aggregating $25,000 were intended to compensate petitioner for her interest in the Forest Avenue Property. Under Indiana law, the original conveyance of that property to petitioner and Pollak as "husband and wife" created a tenancy by the entirety. *Dotson* v. *Faulkenburg*, 186 Ind. 417, 419, 116 N.E. 577, 578; *Simons* v. *Bollinger*, 154 Ind. 83, 85–87, 56 N.E. 23, 34–25; *Brown*

---

[2] The solution of the problem before us is not advanced by a consideration of sec. 71(c), dealing with a "Principal Sum Paid in Installments." Of course, if sec. 71(c)(1) is applicable, then petitioner is entitled to prevail. In its effort to establish that sec. 71(c)(1) is inapplicable the Government relies upon sec. 1.71–1(d)(3)(i), Income Tax Regs., which in substance provides that where the payments are to be paid over a period of 10 years or less, they may be considered periodic payments under sec. 71(a) only if two conditions are met:

(a) Such payments are subject to any one or more of the contingencies of death of either spouse, remarriage of the wife, or change in the economic status of either spouse, and

(b) Such payments are in the nature of alimony or an allowance for support.

While it is true that the first condition is satisfied here (since the payments were to cease upon the death of either spouse), the second condition raises the identical question to be answered in this case upon a consideration of sec. 71(a) itself, namely, whether the payments were in fact alimony or support rather than compensation for petitioner's property. Accordingly, sec. 171–1(d)(3)(i) of the regulations does not present anything additional to be taken into account in dealing with the matter before us.

v. *Brown*, 133 Ind. 476, 477, 32 N.E. 1128, 33 N.E. 615; *Richards* v. *Richards*, 60 Ind. App. 34, 38, 110 N.E. 103, 104 (Ind. App.), and cases cited therein; cf. Ind. Ann. Stat. (Burns), secs. 56–111 and 56–112. Such a tenancy vests in each spouse a present interest in the property so held. See Note, "Selected Tax Aspects of Divorce and Property Settlements," 41 Ind. L. J. 732, 747. "The property belongs as much to the wife as to the husband and she has a joint right with him to its use and enjoyment during the existence of the marriage." *Yarde* v. *Yarde*, 117 Ind. App. 277, 278–279, 71 N.E. 2d 625 (Ind. App.), and cases cited therein. The petitioner and Pollak continued to be tenants by the entirety in the Forest Avenue Property up until the time of the separation agreement and divorce.

If no disposition is made of property held in tenancy by the entirety when a husband and wife are divorced, the effect of the divorce under Indiana law is to make the husband and wife tenants in common of the property previously held by the entirety. Ind. Stat. Ann. (Burns) sec. 3–1218; *Smith* v. *Smith*, 131 Ind. App. 38, 52, 169 N.E. 2d 130, 137 (Ind. App.). Therefore, had petitioner and Pollak not disposed of the Forest Avenue Property under the separation agreement as they did, petitioner would have been vested with the interest of a tenant in common at the time of the divorce. We think it was for this property interest that petitioner received the payments aggregating $25,000 under the "alimony" provisions of the separation agreement.

This conclusion is supported by the fact that petitioner—aside from being vested with the property rights of a tenant by the entirety—had made substantial contributions to the purchase of the Forest Avenue Property. Petitioner and her parents accounted for $4,500 of the $8,000 downpayment on the Rush Street Property which petitioner and Pollak purchased when they were first married in February, 1952. In addition, during the first 6 months of her marriage to Pollak she earned a salary of approximately $1,000 that was part of their family resources out of which mortgage payments on the Rush Street Property were made. In all, petitioner and Pollak made mortgage payments of $9,980.99, exclusive of interest. When the Rush Street Property was finally sold petitioner and Pollak realized a gain of $4,800, part of which was attributable to petitioner's individual investment. The total liquid proceeds from the sale of the Rush Street Property along with petitioner's and Pollak's savings were then used in the purchase of the Forest Avenue Property.

We think it highly unlikely that petitioner would have given up her rights in the Forest Avenue Property merely for the household furnishings provided for her under article II of the separation agreement, as contended by the Government. Her negotiations leading up

to the execution of the agreement plainly established the contrary, and we are fully convinced by her testimony that the payments aggregating $25,000 called for by article III of the agreement, although labeled as alimony, were in fact intended to be in settlement of her entirety interest in the Forest Avenue Property. "Where the wife has property of her own, such provisions appearing in a separation agreement or divorce decree are often regarded as persuasive that payments to the wife represent a property settlement rather than support payments." *Wilma Thompson*, 50 T.C. 522, 526.[3] Such is peculiarly the situation here. During the negotiations prior to the separation agreement Pollak offered the Forest Avenue Property to the petitioner in settlement of their marital property but petitioner refused. And the impasse was finally broken when petitioner agreed to accept the $25,000 instead. We think it highly unlikely that she would have accepted instead second-hand household furnishings of far less value.[4]

The Commissioner, however, argues that the language in the separation agreement and divorce decree characterizing the payments as "alimony" should be determinative of the facts before us. He relies on *Commissioner* v. *Danielson*, 378 F. 2d 771 (C.A. 3), certiorari denied 389 U.S. 858, reversing 44 T.C. 549, which held that "a party can challenge the tax consequences of his agreement as construed by the Commissioner only by adducing proof which in an action between the parties to the agreement would be admissible to alter that construction or to show its unenforceability because of mistake, undue influence, fraud, duress, etc." 378 F. 2d at 775. Failing his argument based on *Danielson*, the Commissioner contends that the petitioner should at least be required to meet the standard of proof ("strong proof") approved in several other circuits and recently applied by this Court in *J. Leonard Schmitz*, 51 T.C. 306, 315–318. Both *Danielson* and *Schmitz* were cases involving the question of what proof is required of a taxpayer seeking to establish that no portion of an amount received in connection with the sale of a business was for a covenant not to compete although the contract for the sale provided part of the amount so received by the taxpayer was for such a covenant. As the Commissioner recognizes on brief, this Court in *Edith M. Gerlach*, 55 T.C. 156, acq. 1971–1 C.B. 2, rejected the application of both *Danielson* and *Schmitz* to cases involving divorce

---

[3] We recognize, of course, that the Court in *Wilma Thompson*, found that such was not the situation in that case by reason of other factors there involved.

[4] On her 1964 tax return petitioner recognized that she was taxable on gain realized from disposition of her interest in the Forest Avenue Property. Certainly she is required to report any such gain under *United States* v. *Davis*, 370 U.S. 65, 68–71. No issue has been raised as to gain realized by petitioner, and we accordingly do not deal with it here.

decrees, stating (55 T.C. at 169) : "The factual situation in those cases [*Danielson* and *Schmitz*] is so different from the factual situation surrounding the entry of a decree of divorce by a judge of a court, that we do not consider those cases to control the determination of the instant case." We decline the Commissioner's invitation to reconsider *Gerlach*, which was decided so recently.

In addition, we note that the onus placed upon a taxpayer under *Danielson* or *Schmitz* to clarify or explain a separation agreement or divorce decree would work against the congressional objective that there be national uniformity in the taxation of such payments arising out of a marital relationship irrespective of technical differences in legal terminology between the laws of the various States. S. Rept. No. 1631, 77th Cong., 2d Sess., p. 83, H. Rept. No. 2333, 77th Cong., 2d Sess., p. 72.[5]

It was undoubtedly to achieve such uniformity that the courts have held in an impressive line of cases that the labels attached to payments made in connection with divorces or separations are not controlling. *Mills* v. *Commissioner*, 442 F. 2d 1149, 1151 (C.A. 10), affirming 54 T.C. 608, 618; *Taylor* v. *Campbell*, 335 F. 2d 841, 845 (C.A. 5) ; *Bardwell* v. *Commissioner*, 318 F. 2d 786, 789 (C.A. 10), affirming 38 T.C. 84; *Ann Hairston Ryker*, 33 T.C. 924, 929; *Blanche Curtis Newbury*, 46 T.C. 690, 694; *Wilma Thompson*, 50 T.C. 522, 525; *William M. Joslin, Sr.*, 52 T.C. 231, 236; *Lewis B. Jackson, Jr.*, 54 T.C. 125, 129–130; *Edith M. Gerlach*, 55 T.C. 156, 167, acq. 1971–1 C.B. 2. Such an attitude has especial application to the facts before us because "alimony," as the term is used under Indiana law, is a multifaceted concept which can embrace payments in division or in settlement of property rights as well as payments for support. Sec. 3–1217—3–1218, Ind. Ann. Stat. (Burns). Compare *Shula* v. *Shula*, 235 Ind. 210, 214–215, 132 N.E. 2d 612, 614, with *McDaniel* v. *McDaniel*, 245 Ind. 551, 558–559, 201 N.E. 2d 215, 218–219. Note, "Alimony in Indiana: Tradi-

---

[5] Prior to 1942, alimony payments were neither includable in the wife's income nor deductible by the husband. By adding secs. 22(k) and 23(u) to the Internal Revenue Code of 1939, secs. 120(a) and (b) of the Revenue Act of 1942, 56 Stat. 816–817, made these payments taxable to the wife and deductible by the husband. Both the House and Senate Committees at that time expressed the intention that these "amended sections will *produce uniformity in treatment* of amounts paid *in the nature of or in lieu of alimony regardless of variance in the laws of different states concerning the existence and continuance of an obligation to pay alimony.*" (Emphasis supplied.) S. Rept. No. 1631, 77th Cong., 2d Sess., p. 83 ; H. Rept. No. 2333, 77th Cong., 2d Sess., p. 72. See *Bardwell* v. *Commissioner*, 318 F. 2d 786, 789 (C.A. 10), affirming 38 T.C. 84; *Taylor* v. *Campbell*, 335 F. 2d 841, 845–846 (C.A. 5) ; *Blanche Curtis Newbury*, 46 T.C. 690, 695 ; *William M. Joslin, Sr.*, 52 T.C. 231, 236, affirmed 424 F. 2d 1223 (C.A. 7) ; 5 Mertens, Federal Income Taxation, sec. 31A.02 (ch. 31A, pp. 20, 23) (Malone, et al., rev. ed. 1969). Sec. 71(a)(1), I.R.C. 1954, is in all material respects identical to sec. 22(k), I.R.C. 1939.

tional Concepts v. Benefit to Society," 29 Ind. L.J. 461–471.[6]

The situation is otherwise as to the payments of $50 per week made by Pollak to petitioner also pursuant to article III of the separation agreement for the 20-week period from January 14, 1964, until June 1, 1964. These payments have the characteristics of support or alimony. They were made to petitioner during the same period of time she was granted rent-free use of the family residence. They were small in amount and payable weekly. Moreover, the petitioner and Pollak had agreed to a settlement of $25,000 for her interest in the Forest Avenue Property. When these weekly payments of $50 are taken into account (in the aggregate amount of $1,000 for the 20-week period) total payments made to petitioner under article III of the separation agreement amounted to $26,000. Though the matter is not completely free from doubt, we think these payments were not part of petitioner's

---

[6] In *Shula* v. *Shula*, 235 Ind. 210, 214–215, 132 N.E. 2d 612, 614 (1956), the Supreme Court of Indiana (Achor, J.) said: "Alimony is awarded in Indiana for the purpose of making a *present and complete settlement of the property rights of the parties. It does not include future support for the wife*, nor is it intended as a medium for providing financial compensation for injured sensitivities during marriage. *The primary factor in fixing the alimony is the existing property of the parties.* However, other facts which the court may consider are the source of the property, the income of the parties and the nature of the abuse inflicted upon the wife—particularly if that abuse affected the earning capacity of the wife and would have been the basis for an action in damages except for the fact of the marriage." (Emphasis supplied.) (See Note, "Selected Tax Aspects of Divorce and Property Settlements," 41 Ind. L.J. 732, 746. *Shula* itself was subsequently explained in *McDaniel* v. *McDaniel*, 245 Ind. 551, 558–559, 201 N.E. 2d 215, 218–219 (filed Sept. 15, 1964, subsequent to the divorce in issue here). In *McDaniel* the Supreme Court of Indiana (Achor, C.J.) said that "it is the *basic concept of alimony that such payment be made in lieu of a wife's right to the continued support of her husband*" 245 Ind. 551, 558, 201 N.E. 2d 215, 218. (Emphasis supplied.) Despite this difference in language from *Shula*, Indiana courts have regarded *McDaniel* as merely "affirm[ing]" *Shula*. *Sidebottom* v. *Sidebottom*, 140 Ind. App. 657, 662, 225 N.E. 2d 772, 775 (Ind. App.). The Supreme Court of Indiana noted in *McDaniel* that "a wife [is not] entitled to alimony as a *method of future support* where *substantial alimony in lieu of such support is awarded out of the estate of the husband*, as in the Shula case." 245 Ind. 551, 559, 201. N.E. 2d 215, 218–219. Therefore, where substantial provisions are made for a wife in a property settlement ("alimony in lieu of * * * support"), the wife may not be entitled to that type of alimony which is "a method of future support." See *Shula* v. *Shula*, 235 Ind. at 216, 132 N.E. 2d at 615; *Temme* v. *Temme*, 103 Ind. App. 569, 574–577, 9 N.E. 2d 111, 113–114 (Ind. App.). Indiana case law subsequent to *McDaniel* continues to regard provisions for the wife in the property settlement as affecting the amount of support alimony a divorce court may grant in its discretion. *Dunbar* v. *Dunbar*, —— Ind. App. ——, 251 N.E. 2d 468, 472 (Ind. App.); *Chaleff* v. *Chaleff*, —— Ind. App. ——, 246 N.E. 2d 768, 769–770 (Ind. App.); *Sidebottom* v. *Sidebottom*, 140 Ind. App. 657, 661–662, 225 N.E. 2d 772, 775, 776 (Ind. App.).

We have previously considered the concept of "alimony" under Indiana law in *Wilma Thompson*, 50 T.C. 522, 527. Because the taxpayer-wife in *Wilma Thompson* owned no property of her own at the time of the divorce, we accordingly held that sums received by her pursuant to a divorce decree could not be in satisfaction of property rights and were instead taxable periodic payments. In *Wilma Thompson* we were not faced with a situation where a wife did hold rights in property at the time of the divorce. Therefore, we relied principally on *McDaniel* and the concept of alimony presented therein ("support"). We did note, however, that had the taxpayer-wife owned property at the time of the divorce, the situation might have been different (*Wilma Thompson*, 50 T.C. at 526), and that the concept of alimony in *McDaniel* was not inconsistent with the concept in *Shula* ("property settlement") under Indiana law. *Wilma Thompson*, 50 T.C. at 527, fn. 8.

and Pollak's division of their marital property. The burden of proof is upon the petitioner, and insofar as she has not explained these payments the Commissioner's determination is approved as to them.

2. Section 212(1), I.R.C. 1954, and section 1.262–1(b)(7), Income Tax Regs., allow a deduction for all ordinary and necessary expenses incurred for the production of income, including legal expenses paid in connection with the collection of amounts includable in gross income under section 71. We have found that $1,000 of the $13,500 petitioner received in 1964 is includable in her gross income. But petitioner has not carried her burden of proof as to what portion, if any, of legal expenses incurred by her in the divorce proceeding was attributable to the $1,000 and we therefore find no error in the Commissioner's disallowance of the deduction claimed.

3. Because we have decided the payments made by Pollak to petitioner in 1965, 1966, and 1967 were not "periodic payments" or in the nature of alimony or support, but rather represented part of the payment for her interest in the Forest Avenue Property, we need not reach the issues related to the Commissioner's determination of the section 6653(a) addition to tax which concerned only those years.

*Decisions will be entered under Rule 50.*